PETER SJOGREN, JR. v. STEPHEN C. HALL, JOSHUA DAVIES, SQUIRE DAVIES AND REED DAVIES.

*Master and servant—Accidental injury.*

An employer cannot be held liable as for negligence in omitting to guard against accidents that are not likely to happen.

Error to Muskegon. (Russell, J.) Feb. 7.—April 9.

CASE. Defendants bring error. Reversed.

---

[1] The limitation was that plaintiff must confine his testimony to showing that he had no breach before the accident.

*Smith, Nims, Hoyt, & Erwin* (for Hall), *Keating & Dickerman* (for the Davies), and *Blair, Kingsley & Kleinhans* for appellants. The fact of an accident is not itself evidence of negligence: *Lehman v. Brooklyn* 29 Barb. 234; *Toomey v. Railway Company* 3 C. B. (N. S.) 146; *Cornman v. Railway Company* 4 H. & N. 781; *Crafter v. Railway Company* L. R. 1 C. P. 300; *Siner v. Great Western R. R.* 37 L. J. Exch. 98: L. R. 3 Exch. 150; *Stubley v. Railroad Company* L. R. 1 Exch. 13; *Gonzales v. Railroad Company* 38 N. Y. 440; *North Penn. R. R. v. Heileman* 49 Penn. St. 60; *L. S. & M. S. Ry. v. Miller* 25 Mich. 274; *Hathaway v. Mich. Cent. R. R.* 51 Mich. 253; *Piquegno v. Chic. & G. T. Ry.* 52 Mich. 40; *Holland v. Chic., Mil. & St. Paul* 18 Fed. Rep. 247; *Stone v. Oregon City Mfg. Co.* 4 Oreg. 52; *McGlynn v. Brodie* 31 Cal. 377; *Hayden v. Smithville Mfg. Co.* 29 Conn. 548; *Brown v. Street Ry.* 49 Mich. 153; *McGinnis v. Canada Southern Bridge Co.* 49 Mich. 467; *Bresnahan v. Railroad Company* id. 410; the plaintiff has the burden of showing defendants' negligence: *Cotton v. Wood* 8 C. B. (N. S.) 568; and if the fact is doubtful the case fails: *Smith v. First Nat. Bank* 99 Mass. 605.

*Cook, De Long & Fellows* for appellee.

COOLEY, C. J. This is an action to recover damages for an injury which the plaintiff claims to have received through the negligence of the defendants. In the circuit court the plaintiff recovered a large verdict.

The material facts are the following: The defendants are joint owners of a steam saw-mill at Muskegon. In September, 1882, three of the defendants were operating the mill, and it is claimed that the fourth was so interested in the results of the business as to be jointly liable with the others for negligent management. A large force of hands is employed in the mill when it is in operation. It stands with one end to the lake, and the logs are taken directly from the water to the log deck. The log-way for this purpose is an inclined trough-shaped way, in the bottom of which runs an endless chain with spikes upon it, which take hold upon the log and carry it up the trough to a spike roller, which catches it and rolls it to one side on the log deck. The chain and

the spiked roller are moved ánd controlled by a large iron gearing-wheel, or bull-wheel, at the upper end of the log-way. The wheel gearing has a lever attached, which is operated by a man in charge, who throws the wheel in and out of gear at pleasure, and moves or stops the logs as occasion may require. It sometimes happens that a crooked log, in coming up, will roll to one side or the other, and that the man in charge will need assistance to bring the log back to its place. When he does so, he calls for help, and this help is furnished by some one employed on the same floor. The bull-wheel is a heavy iron wheel, about thirty-eight inches in diameter. Its speed is about fifteen revolutions to the minute, and it runs within an inch or so of the bridge-tree which supports it. The bridge-tree on the side where the injury occurred is ten inches in width, and at the time of the injury there was a box at the side of it, and of the same height, which gave ten inches additional width. The center of the shaft of the wheel sat a few inches above the bridge-tree, so that the wheel was more than half above it. The wheel was entirely uncovered. The man in charge stood partially behind the wheel and above it.

The injury occurred September 12, 1882. The plaintiff, who was eighteen years of age, had been at work in the service of the defendants, who were operating the mill, and had been employed on the log deck for four weeks or so at that time. His business was to catch the sawed lumber from the carriers, and place it where it should be required. While working there he had been called two or three times to assist the man at the bull-wheel in bringing a log back to its place, and had given the required aid. In the afternoon of the day named he was called to give assistance again, and he went with his cant hook, stepped upon the box by the side of the bridge tree, reached over the wheel, and drew the log to its place. The wheel was then standing still, but as the plaintiff turned to go back to his work, the wheel was started up. The man in charge of it was not at the time looking at the plaintiff, but immediately he heard a cry, and turning saw the plaintiff's foot in the wheel. He threw the

wheel out of gear instantly, but the plaintiff's limb was found to be so badly crushed as to require amputation above the knee. How the accident occurred is not well explained. The plaintiff appears to have slipped as he turned about, but no one seems to understand why this should have brought his foot into the bull-wheel.

The plaintiff relies for a recovery upon the negligence of the defendants in leaving the wheel uncovered. It was shown on the trial that at a very small expense a protection could have been constructed by the side of the wheel which would have rendered this accident impossible, and it is contended that the failure to provide this protection was such culpable disregard of the safety of those whom the defendants employed as to make them responsible for all consequences. If the accident which occurred was one at all likely to happen—if it was a probable consequence of a person working about the wheel that he would be caught in it as the plaintiff was,—there would be ground for pressing this argument. But the accident cannot be said to be one which even a prudent man would have been likely to anticipate. The implement from which danger might come was a revolving wheel fully exposed to sight, and much less dangerous, one would suppose, than the saws in the same mill which could not possibly be covered. It would be difficult to mention any kind of powerful machinery in a manufactory of any sort which, before an accident had occurred, would seem less likely to have caused one.

The unexpected has happened, and we have only to see whether the defendants were neglecting any duty in not guarding against it. We do not learn that there was any thing unusual in the bull-wheel of a saw-mill being left thus uncovered, and we have a right to assume that there was not, or we should have been informed. The plaintiff was at work in the same room, where he saw the wheel continually, and was as much bound to expect danger from it as was any one. But apparently he had no suspicion that the wheel was likely to do him harm, and in fact it would not have harmed

him had not a very unexpected and antecedently improbable accident brought his foot within the arms of the wheel.

A similar accident, attended by equally serious consequences, might happen almost anywhere, in any machine-shop or on a farm as well as in a mill, and after it had happened it could be readily seen how it might have been avoided. But the fact that it was avoidable does not prove that there was fault in not anticipating and providing against it. If a farm laborer falls from the hay-mow, the fall does not demonstrate that the farmer was culpable for not railing the mow in. A man stumbling in a blacksmith-shop might have his hand or even his head thrown under the trip-hammer, but it would not follow that there had been any neglect of duty on the part of the blacksmith in leaving the hammer exposed. So far as there is a duty resting upon the proprietor in any of these cases, it is a duty to guard against probable dangers; and it does not go to the extent of requiring him to render accidental injuries impossible.

This case closely resembles *Richard v. Rough*, ante, p. 212, which was submitted a few days earlier. In both cases the person injured was a laborer, who had the same means as the employer of understanding the danger. In both cases the injury was the result of such an accident as no one would have been likely to foresee,—its liability to happen was only proved by its actually happening. And in both, after the injury had occurred, it was easy to show how it might have been avoided. But the very fact that the laborer, who was not wanting in intelligence or incapable of judging of probable dangers, should continue to expose himself without hesitation, and apparently without fear, to such risks as these were, is very conclusive proof, either that the employer was not culpable in the matter complained of, or that the laborer was inexcusably careless of his own safety. But the truth undoubtedly is that the accident which occurred, so far from having been anticipated by either party, was a surprise to both.

The precise accident that occurred in either of these cases might never occur again at all. The next might be some-

thing entirely different, and require altogether different precautions. But it might, nevertheless, be seen after it had occurred that it could have been easily guarded against. If the fact that prevention was possible is to render the employer liable, then he may as well be made an insurer of the safety of those in his service in express terms, for to all intents and purposes he would in law be insurer whether nominally so or not. But this would work a radical change in the law of negligence in its application to the relation in which these parties stood to each other.

Some importance was attached on the trial and on the argument in this Court to the fact that the plaintiff testified that he did not fully understand and appreciate the danger from the wheel; but what he could have meant by this is not clear. He knew as well as any one could know that if he put his foot between the arms of the revolving wheel his leg would be crushed, and he could judge as well as any one how much he was exposed to such an occurrence. If he were to say the contrary to this, it would be just as idle as for a man working about a precipice to say he did not understand or appreciate the danger which might come from falling over. Probably what the plaintiff really meant was that he did not look for or anticipate such an accident as occurred. But neither did the defendants. We think the plaintiff failed entirely to make out any case, and the jury should have been so instructed. The evidence shows a case of pure accident, with no more negligence on one side than on the other.

A new trial must be granted.

Campbell and Sherwood, JJ., concurred. Champlin, J., did not sit in this case.