JOURNEAUX v. E. H. STAFFORD CO.

1. MASTER AND SERVANT— DANGEROUS MACHINERY — ASSUMPTION OF RISK.

A factory employé who tripped and fell upon a small circular saw, the edge of which extended about 2 inches above the surface of an equalizing machine, in which it was set at a place 18 inches from the front, 26 inches from the rear, and 8 inches from the edge of the table of such machine, cannot recover from his employer for his injuries, where it appears that he was acquainted with the situation, and had been warned of, and appreciated, the danger of coming in contact with the saw; the risk being assumed by him as incident to his employment.

2. SAME—SCREENING SAWS—DUTY OF MASTER.

A manufacturer is under no legal duty to provide guards or screens for all machinery the contact with which would be dangerous, where employés are warned of the danger, and are given room to carry on with reasonable safety the work they are expected to perform.

3. SAME—CUSTOM AMONG MANUFACTURERS—EVIDENCE.

A general custom among manufacturers of screening the

small circular saws in use on equalizing machines is not shown by the testimony of a single witness that it is customary to screen such saws, and that he has seen screening devices in use on equalizing machines in another State, but never in this State.

Error to Muskegon; Russell, J.   Submitted October 27, 1899.   Decided December 21, 1899.

Case by John Journeaux, an infant, by Mary Journeaux, his next friend, against the E. H. Stafford Company, for personal injuries.   From a judgment for plaintiff, defendant brings error.   Reversed.

The following statement of facts is taken substantially from the defendant's brief, and is not disputed by the plaintiff:  The injury of which plaintiff complains occurred on the 30th of December, 1898, and during his employment at defendant's factory.   He was 15 years old on the 7th of April, 1899, and was employed on the written application of his mother, his father being dead.   His ordinary work was to carry material which had passed through a small planing machine, called a "sticker," from the machine to a place of temporary deposit.   In the same room was what is known as a "combination machine," sometimes called an "equalizer," and which was operated by one Lewis, an employé of defendant.   This machine was located near the southwest corner of the room, 4 feet from the west wall.   The machine is in two sections, each 4 feet 4 inches long, 2 feet 5 inches wide, and 36 inches high.   The section complained of was at the time of the accident provided with a small circular saw, placed 18 inches from the front, 26 inches from the rear, and 8 inches from the westerly edge of the table of the machine, its upper edge extending far enough (about 2 inches) above the surface to do the work required.   At the time of the accident it was being operated on small boards, 20 inches long, 15 inches wide, and ⅜ of an inch thick.   The operator, Lewis, had been doing this kind of work, him-

self carrying the pieces to a table near the southwest corner of the machine, before the plaintiff went to assist him, and, when plaintiff went to him, was nearly through with that work. The plaintiff knew the danger of his surroundings, and was instructed how to do his work, to be careful not to come in contact with the saw, and not to touch anything until the pieces being operated upon had passed the saw. He had avoided coming in contact with the saw all that day, and at other times while at work there he had been careful to avoid it. Before the plaintiff commenced this particular work, he had seen Lewis carry the material, after it had been worked, to a little table near the north end of the machine. He knew that ordinarily the pieces constituting a lot were kept together, and that it was necessary to take the pieces he carried to the same place to which Lewis had taken a part of the same lot, and he did so a part of the time; but at the time of the accident he was engaged in carrying three pieces from the rear of the machine to a place back of Lewis, making it necessary to go between the machine and the wall. The change by plaintiff of the place of deposit was on his own motion, and without instruction from any one. Near the north end of the machine was a slight rise of the floor, about 1 inch; and plaintiff says that he stumbled on this rise of the floor, and fell so that his left arm came in contact with the saw 8 inches from the edge of the table of the machine; that he was then carrying three pieces, having placed one on another, and having taken hold of the ends, with one edge resting against his body, his elbows extended, and raised to a height a little higher than the top of the surface of the table of the machine. He was perfectly familiar with the rise in the floor. But this is not the subject of complaint. He could see the saw plainly, and knew it was running. He also knew that if he stumbled so that his arm, in the position described, came in contact with the saw, he would get hurt. He had worked in that room about four months. He was injured at 5:30, and had been engaged at that machine all

day, and had worked at it about two months before, but how long he does not state. Why he walked so near the machine is unexplained. The negligence claimed is the failure to provide a hood, screen, or device for protecting the saw so that persons employed upon or about the machine could not come in contact with the saw. The only material fact about which there is any dispute is whether plaintiff was carrying the pieces of board at the time he was injured. The testimony on the part of the defendant tended to show that he was not. Plaintiff recovered verdict and judgment.

*Smith, Nims, Hoyt & Erwin,* for appellant.

*Turner & Turner* and *Cross & Lovelace,* for appellee.

GRANT, C. J. (*after stating the facts*). Plaintiff was a very intelligent boy; had been employed in this room in similar work for four months; fully comprehended the situation, the danger, and the necessity of keeping away from the saw; had a space of 4 feet within which to carry boards 15 inches wide; had been duly cautioned of the dangers and care required of him about his work; had worked before at this particular machine; and had nearly completed this day's work with safety. There is no room for claiming, nor is it claimed, that he was inexperienced, unintelligent, or so young as not to appreciate the situation. There was no unknown or latent danger into which he was sent. The accident was not one which a prudent man would probably anticipate or provide against. Plaintiff's fall was either the result of his own want of care, or else was purely accidental. There was no danger from the side of the machine. No injury could come to the plaintiff unless he got his arm on the table of the machine, 3 feet from the floor, and on the saw, 8 inches from the side. Such an event was not probable.

The court instructed the jury as follows:

" Now, it is claimed on the part of the defendant here

that when this young man went in there, and looked the surroundings over, and saw the saw and the table, and the surroundings, and the work that was to be done, and all that sort of thing, that from his own testimony, and from his ability and experience, he knew the dangerous character of the saw,— in fact, that he took in the situation, and that he knew all of the danger and all of the surroundings in connection with this machinery and the work that he had to do; that he appreciated it fully. Now, if you find that that is true, gentlemen, why, of course, he cannot recover here, because he had a perfect right, if he desired to do so, to go there and work with a saw that had not any hood on,— one that was dangerous,— if he understood the entire surroundings. If he did that, as I say, he cannot recover."

The plaintiff's own testimony showed that he saw the situation, had been instructed in his work, and had been warned of and appreciated the danger. He therefore assumed the risk. The case is clearly within the following decisions: *Sjogren* v. *Hall*, 53 Mich. 274; *Lindstrand* v. *Lumber Co.*, 65 Mich. 254; *Fort Wayne, etc., R. Co.* v. *Gildersleeve*, 33 Mich. 133; *McGinnis* v. *Bridge Co.*, 49 Mich. 466; *Richards* v. *Rough*, 53 Mich. 212; *Schroeder* v. *Car Co.*, 56 Mich. 132; *Borck* v. *Nut Works*, 111 Mich. 129; *Prentiss* v. *Manufacturing Co.*, 63 Mich. 478.

The facts were undisputed, and the court should have directed a verdict for the defendant. The danger was open and apparent to all. Defendant had provided sufficient room around the machine wherein plaintiff could work with safety. Manufacturers are under no legal duty to provide guards or screens to machines of this character, where they have left sufficient room to carry on the work around them, and have duly instructed their employés in such work, and warned them of the dangers attending it. To hold otherwise would be to require all machines, the contact with which would be dangerous, to be provided with guards or screens, and to require the use of every possible safeguard against accident. The authorities do not so hold. There is always more or less danger

in operating and working around machines like that in use by the defendant. It is a part of the employé's contract that he assumes that danger. *Sullivan* v. *Manufacturing Co.*, 113 Mass. 396.

It is urged that plaintiff introduced testimony to show the common use of screens or hoods over machines of this character for the purpose of protection to those working in the position of plaintiff. One witness was produced to show such custom. He testified that he had seen those devices on machines in factories in Mishawaka and Elkhart, Ind., where he had worked, and that he had also been in a great many other factories. He then testified:

"It is the custom in factories of this kind to protect saws of this character, as a general rule, by splitters; and, if they have no guard over the top of the saw (that is, a patent guard), they have an iron bent over on which they hang a lever to arrest the dust from flying in the man's eyes that is in front of the saw."

From this testimony it would appear that the object of the screens and hoods is to protect the person standing in front of and operating the saw. After asking the witness if, in his opinion, plaintiff would have been injured if the machine had been thus protected, and eliciting the answer, "If there had been anything there, any protection at all, it would have been impossible for him to get onto the saw," his attorney put the leading question: "Is that the main object for which these devices are used, or one of the objects?" Witness answered, "Yes." On cross-examination the witness testified as follows:

"*Q.* I understand you to say that it is customary to use a screen or hood, or some device, on machines of this character,—equalizing machines?

"*A.* I said it was customary to use it on all rip-saws.

"*Q.* Is it customary to use a screen, hood, or other protection to the saw on an equalizing machine?

"*A.* It can be used on equalizing machines.

"*Q.* Will you kindly answer my question?

"*A.* I have seen it used on equalizing machines.

"*Q.* Will you please answer my question?

"*A.* Yes, sir.

" *Q.* You say it is customary?

"*A.* Yes, sir.

" *Q.* Why hesitate about answering it?

" *Mr. Lovelace:* Because you would not let him explain it.

" *Q.* I didn't ask for any explanation. Maybe he can tell why he hesitates, as well as counsel.

"*A.* I would like to explain these things. I like to explain them just as they are.

" *Q.* I understand you to say it is customary to use these screens, hoods, or other devices on equalizing machines?

"*A.* I have seen them used on equalizing machines in different factories.

" *Q.* Do you understand my question?

"*A.* Yes, sir; I do.

" *Q.* Do I understand you to say now that it is customary to use them on equalizing machines?

"*A.* When they are used as a rip-saw, it is.

" *Q.* And you have seen them on equalizing machines in Michigan?

"*A.* No, sir; I never saw them in Michigan."

The testimony fails to sustain the claim that these devices are in common use on machines like this one, or that they are designed to protect those who are employed in carrying material to and taking it away from the machine, and who have ample room provided for the work without coming in contact with the saw. The machine was used for a variety of work. Defendant gave evidence tending to show that some of this work, such as grooving, could not be done on the machine if provided with the device, and that its presence would interfere with the operator, and materially affect the efficiency of the machine, on the kind of work then being done. Plaintiff makes no case for the application of the rule that railroad companies and manufacturers are required to adopt those inventions for the protection of their employés which are in ordinary use, and the failure to adopt which is negligence.

Judgment reversed, and new trial ordered.

The other Justices concurred.