WILLIS v. BESSER-CHURCHILL CO.

INJURY TO EMPLOYÉ—ASSUMPTION OF RISK.

<div style="margin-left:2em">

An employé in a shingle mill, who had had considerable experience in and about such mills, assumed the risk of injury from the failure of the movable table of a cut-off machine, which he was operating, to clear the saw, due to an accumulation of refuse at the foot of the machine, and cannot recover therefor against his employer; the tendency of such material so to accumulate, and the probable effect thereof, being open to ordinary observation.

</div>

126    659
f126    670
126    659
s86NW  133

Error to Alpena; Emerick, J.    Submitted May 10, 1901. Decided May 21, 1901.

Case by Samuel T. Willis against the Besser-Churchill Company for personal injuries.    From a judgment for plaintiff, defendant brings error.    Reversed.

*U. R. Loranger*, for appellant.

*Charles R. Henry* and *Joseph H. Cobb*, for appellee.

MOORE, J.    The plaintiff, while operating a circular saw for defendant, severely injured his hand.    For this injury he brought suit and recovered judgment.    The case is brought here by writ of error.    Many questions are raised by counsel, but we think one of them is decisive.

The plaintiff was a man of at least ordinary intelligence, 37 years old.    According to his testimony, he had lived in the lumber region about 15 years, and had worked around or about sawmills 8 or 9 years.    He worked 30 or 35 days in defendant's mill, taking bolts from the drag saw to the cut-off table.    He quit work for a time, when he was employed to work at the cut-off table and saw.    The manner of doing the work is described as follows by the counsel for plaintiff:

" The cut-off table and saw were used in sawing and cutting the long bolts taken from the drag saw in proper lengths for shingles, and consisted of a fixed, stationary, circular saw, with hooked teeth, and a movable, trough-shaped table, with a slot and opening transversely through the back and partly through the bed or base of the table, through which the saw would protrude when the movable table was pushed back towards the saw. The table was built on frame timbers or legs fastened near the floor of the mill on an iron rod in such a manner as to be swung or moved by the operator from an upright position over and towards the saw far enough to saw off the bolts. The legs on which the table rested, and to which it was fastened, held the table in an upright position when not in operation, and were so constructed as to prevent the table from coming further towards the operator than in an upright position by means of stationary stop timbers at the base of the legs of the table, against which the legs of the table came in contact when upright, and when bolts were not being sawed by the operator. When the table with the bolt on it was pushed forward by the operators onto the saw, a V-shaped opening would be made between the stop timbers and the base of the legs of the table; and, if any material dropped into this V-shaped opening, it would prevent the table from coming back in its proper place, and cause the saw to protrude through the slot in the table to an extent controlled by the size of the obstacle.

"Two men operated this table. The plaintiff was one at the time of the injury; John McAuliff, the other. Together they would place a long bolt on this trough-shaped table, square off one end of the bolt, together shove it along against a stop-gauge attached to the back of the table and to the left of it, as you face the table, to gauge the length of the cut. They would then shove the bolt into the trough of the table, and together would shove the table against the saw. When the cut was sawed off, they would pull the table back to its upright position; and, if no obstacle lodged between the stop timbers and the legs of the table at the base of the legs aforesaid, the table would come back so as to clear the saw."

The plaintiff worked with this machine 5½ days, when he was hurt. At the time of the accident, which occurred about 11 o'clock in the forenoon, the men had a wet, slimy, cedar log, about 10 inches in diameter, on the table. They

had squared off the end of the log, and cut from it one shingle bolt. What occurred then is described by the plaintiff as follows:

"We cut a shingle length off, and McAuliff put it to the bolter. The table came back, and the bolt rolled back on the back of the table. I shoved it to the gauge, and my hand slipped over the back of it, and the saw catched my hand. I grabbed my hand like this, and I says, 'My God! this is awful.' I stood there just long enough to see that those teeth were projecting through the slot. Then I seen what was wrong underneath,—that there was some obstruction that was keeping this timber from coming back to the stop timber here,—and I left the table. After the first cut had been taken off, one cut remained, which had to be squared on the right-hand end. After the first cut had been cut, I let the table drop back in the usual way. Then, after the bolt rolled away from the trough, I did as I usually did,—grasped the bolt with my left hand and shoved it towards the gauge. This time my hand slipped, the bolt rolled a trifle in, and the saw catched me on the back of the hand."

It is the claim of the plaintiff that, because of the liability of bark and sawdust to prevent the table coming back, the machine was a dangerous one, known to be such by the defendant, and that allowing plaintiff to work with this machine without instructing him about the danger made it guilty of such negligence as would entitle him to recover. The saw in use was four feet four inches in diameter. A model of the machine was produced in court by the plaintiff. An inspection of it, as well as a perusal of the description of the machine and the manner of its operation, shows it to be of very simple construction. It was apparent to anybody that, if sawdust and bark were allowed to accumulate at the bottom of the machine, it was liable to prevent the table from coming back sufficiently to clear the saw. If the person operating the machine exercised such care as was due to himself, as well as to his employer, to see whether the table was clear of the saw before pushing the bolt along, he would have no trouble in learning that fact. It would be shown not

only by the protrusion of the saw through the opening, but it would be shown by the position of the table itself, swinging as it did upon a pivot. It does not require a very high degree of intelligence to know that a rapidly revolving saw, more than four feet in diameter, is a source of danger to any one working in its immediate vicinity. It must have been apparent to the plaintiff that it was dangerous to push the log along until the table was in proper position. In the exercise of ordinary care, he should have known the table was in proper position before he pushed the log along. The injury which the plaintiff has received is greatly to be regretted, but it occurred under such circumstances as to be one of the risks of the business in which he was engaged. *Schroeder* v. *Car Co.*, 56 Mich. 132 (22 N. W. 220); *Sjogren* v. *Hall*, 53 Mich. 274 (18 N. W. 812); *Kean* v. *Rolling Mills*, 66 Mich. 288 (33 N. W. 395, 11 Am. St. Rep. 492); *Balle* v. *Leather Co.*, 73 Mich. 158 (41 N. W. 216); *Toomey* v. *Steel Works*, 89 Mich. 249 (50 N. W. 850); *Wheeler* v. *Berry*, 95 Mich. 251 (54 N. W. 876); *Johnson* v. *Hovey*, 98 Mich. 343 (57 N. W. 172); *Mackin* v. *Refrigerator Co.*, 100 Mich. 276 (58 N. W. 999); *Lamotte* v. *Boyce*, 105 Mich. 545 (63 N. W. 517); *Journeaux* v. *E. H. Stafford Co.*, 122 Mich. 396 (81 N. W. 259).

Judgment is reversed. No new trial ordered.

MONTGOMERY, C. J., HOOKER and LONG, JJ., concurred. GRANT, J., did not sit.