BERLIN *v.* WILLIAM B. MERSHON & CO.

Master and Servant—Negligence — Dangerous Machinery — Warning to Children.

> Where the testimony shows that a boy 16 or 17 years of age, who was injured in the cogwheels of a planer while waiting for the foreman to adjust the machine, had worked with the planer until he knew its manner of operation and the danger from the cogwheels, no recovery for the injury against his employer can be based upon a failure to warn him of the danger.

Error to Saginaw; Snow, J. Submitted December 5, 1902. (Docket No. 45.) Decided January 27, 1903.

Case by August Berlin, by next friend, against William B. Mershon & Company, for personal injuries. From a judgment for plaintiff, defendant brings error. Reversed.

*Humphrey & Grant,* for appellant.

*Wilber & Brucker* and *Fred L. Travers,* for appellee.

Moore, J. The plaintiff recovered a judgment against the defendant for personal injuries received while in its employ. At the close of the testimony, a request was made that a verdict be directed in favor of defendant. This request was refused. A good many assignments of error were made and argued by counsel, but the important question is whether a verdict should have been directed as requested.

The plaintiff was at work upon a planing and matching machine at the time of the injury. There is a dispute as to his age at that time. He claims he was but 16 years and 3 months old. The defendant claims he was 1 year older. The machine upon which he was hurt was known as a "Schenck Machine." Four of them were in use in the building where plaintiff was employed. A pho-

tograph of it is before us, which gives a better idea of its construction than it is possible to give in words. This machine had been in use several years. There is no claim that it was out of order, but it is claimed that, because certain cogwheels were uncovered, it was a dangerous machine, and that, because of the tender years of plaintiff, he should have been warned of the danger.

This machine was used for planing and matching lumber varying in length from 18 inches to upwards of 12 feet long. The bed of the machine was 9 inches wide. The boards to be planed or matched were put upon the bed of the machine, where they were engaged by two rollers which were driven by cogwheels, and carried forward to other rollers and knives, which did the planing or matching. One board was followed in close succession by another. Between the bed of the machine and its frame was a space of 9 inches. When boards shorter than 4 feet were to be planed, the person feeding the machine put a bag filled with sawdust, or some article of clothing, upon the bed of the machine, to serve as a cushion, and sat upon it, astride of the bed of the machine, with his legs hanging between the frame of the machine and its bed. The operator then took the short boards from a table at his left hand, where they were placed by another employé, put them upon the bed of the machine immediately in front of him, and pushed them forward until they were engaged by the rollers and carried forward; one board quickly following another. The cogwheels where the injury occurred were at the right end of the rolls, and between the bed of the machine and its frame. They were from 7 to 9 inches in diameter, and in plain view. They revolved in such a way that, if the operator got his fingers between them from the side nearest him, instead of his hand being drawn between the cogwheels it would be thrown away from them.

The accident occurred January 15, 1900. It is shown by the testimony of the plaintiff that in April, 1897, he presented to the defendant a letter, the contents of which

he knew, signed by his father, asking that he be given employment, and stating he was 14 years old the 2d day of the previous October. He was given employment in and about the planing mill, and continued to work for the defendant until the accident,—a period of 2 years and 9 months. About 8 or 9 months before the accident, he was put at work upon the planer, where he was hurt, planing or matching lumber running from 4 feet long to upwards of 12 feet, and worked there steadily until the accident, except when boards shorter than 4 feet were run through the machine, when he changed off with an older brother, who ran a planer next to this one, and in plain view of it, so that he could see how his brother did the work, if he looked.

On the morning of January 14th, plaintiff was put at work shoving 18-inch boards through the machine, and worked eight hours that day. On the morning of the 15th he worked about a half hour, when he ceased pushing boards through the machine, to enable Mr. Piker to change the machine so that wider boards might be run through it. The plaintiff continued to sit upon the bed of the machine, and in some unaccountable way his hand was caught in the upper or back part of the cogwheel, and three fingers were badly crushed. His version of how it occurred is as follows:

On the direct examination:

"*Q.* Tell the jury, as near as you can, how you got hurt.

"*A.* My hand got up there suddenly, and catched in there some way.

"*Q.* Got between those cogs?

"*A.* Yes. I cannot tell just how it was. When I was at work my hand caught in there some way; came in contact with it."

On the cross-examination he said:

"*Q.* How did you get your hand in that place in operating that machine?

"*A.* Why, caught it in there some way.

" Q. How did you get it in there in pushing the boards into that machine?

"A. I was not pushing the boards through. ·

" Q. In pushing the boards into that machine, it wasn't possible for you to get your hand in there, was it?

"A. No, sir.

" Q. What were you doing when you got your hand caught clear over the outside of this cog in there?

"A. Do you mean what I was at work at?

. " Q. What were you doing to get your hand in that position and get it caught?

"A. We were changing the machine.  *  *  *

" Q. What were you doing while he was changing the machine?

"A. Sitting there.

" Q. Then you were doing nothing, were you not, at the time?

"A. Yes.

" Q. Well, now, how did you get your hand in there?

"A. I was so excited I could not tell.

" Q. You were so excited you could not tell anything about it?

"A. No, sir.  *  *  *

" Q. Why did you get closer to the machine when you were doing nothing than when you were feeding?

"A. I don't know.  I slipped there.

" Q. Who slipped you over?

"A. I did myself.

" Q. You slipped over next to the machine?

"A. Yes.

" Q. Who told you to do that?

"A. No one.

" Q. The place the foreman told you to sit and operate the machine, if you had sat there, you would not have got hurt, would you?

"A. No, sir.

" Q. Now, you were sitting there doing nothing, so you slipped up next to the machine?

"A. Yes.

" Q. Then how did you get your hand in there?  What were you doing to get it in there?

"A. Nothing.  *  *  *

" Q. What would cause you to slip on the frame?

"A. I can't tell you now how I got in there; I was so excited.

"*Q.* You couldn't tell anything about it?

"*A.* No, sir.

"*Q.* But you stated while he was fixing the machine you yourself moved yourself over next to the machine. Is that true?

"*A.* I just moved over there. I didn't know anything about anything.

"*Q.* You must have moved over there without knowing anything about it?

"*A.* Not particular.

"*Q.* You must have moved over there, to get your fingers in there?

"*A.* Yes."

He then stated he got closer to the cogwheels in order to straighten the boards that were on the table from which he took them. His cross-examination also showed the following:

"*Q.* How long had you been working at that kind of work there?

"*A.* I had for two years ago; a year and a half.

"*Q.* How near was the planer that your brother ran to the one you ran?

"*A.* Right beside of each other; enough room to go through.

"*Q.* As near as from me to that desk?

"*A.* Just about.

"*Q.* Right close together?

"*A.* Yes.

"*Q.* So, whenever your brother was running this short stuff through, and had been running it through for eight or nine months, you saw just how he would do it?

"*A.* Yes.

"*Q.* And after looking at him you knew just as much about how to do it as he did, didn't you?

"*A.* Why, yes.

"*Q.* Of course you did; and you knew all about that machine, didn't you, and knew if you got your hand in those cogs around on the back side of that machine you would get them hurt?

"*A.* No, sir.

"*Q.* You didn't know it?

"*A.* No, sir.

"*Q.* Why?

"*A.* Because I never examined the machine before.

"*Q.* Didn't you know that if cogwheels are working in together, and you stuck your fingers down in there, it would hurt them?

"*A.* Sure, it will hurt them.

"*Q.* Did you know it on that day?

"*A.* No, sir.

"*Q.* Why?

"*A.* I paid no attention to it.

"*Q.* Oh, on that day, and prior to that day, you didn't know it would hurt if you stuck your finger into a cogwheel if it was coming together?

"*A.* Anybody knows it would.

"*Q.* Then you knew if you got your fingers in 'there they would get hurt, at that time?

"*A.* After I got them in I knew I did.

"*Q.* Didn't you know it before you put them in?

"*A.* No, sir.

"*Q.* Then before you got your fingers in the cogwheel you thought you could do that without their being hurt?

"*A.* No, sir.

"*Q.* You didn't know it?

"*A.* No, sir.

"*Q.* You didn't know they would be hurt if you got them in there?

"*A.* Yes; I knew if I got them in there they would be hurt.

"*Q.* Certainly; and the way,—how you got your fingers in there,—you don't know?

"*A.* No, sir.

"*Q.* Now, all the time you worked there those cogwheels were uncovered, that you worked at?

"*A.* Yes.

"*Q.* Cogwheels right in plain sight all the time?

"*A.* Yes.

"*Q.* You knew they were uncovered all the whole time?

"*A.* Yes.

"*Q.* Did you ever object to working with your machine with the cogwheels uncovered?   *   *   *

"*A.* No, sir.

"*Q.* Never made any objection of any kind, did you?

"*A.* No, sir.

"*Q.* Had you worked on that matcher as your steady job for nine months before you were hurt?

"*A.* Yes.   *   *   *

" *Q.* The machine was exactly in the same condition the day you were injured as it was during all the time you worked there, wasn't it?

"*A.* Yes.

" *Q.* It hadn't been changed in any way, shape, or manner, had it?

"*A.* No, sir.

" *Q.* The same cogs?

"*A.* Yes.

" *Q.* Worked in the same way?

"*A.* Yes.  *  *  *

" *Q.* And when this 18-inch stuff would come to your planer, as I understand you, you had exchanged with your brother?

"*A.* Yes; I did when he was there.

" *Q.* And then he would run through the 18-inch stuff, and you would run through the stuff on his machine?

"*A.* Yes.

" *Q.* And you saw how your brother did the work?

"*A.* Yes.

" *Q.* Why did the foreman, then, have to. tell you how to do it, if you had known how?

"*A.* He didn't tell me how to do it.  He told me to sit on it.

" *Q.* He didn't tell you to sit on there, or what to do. You knew what to do, didn't you?

"*A.* Yes.

" *Q.* You had seen your brother do it time and again?

"*A.* Yes.

" *Q.* And you did the work exactly as you had seen your brother do it?

"*A.* Yes."

The plaintiff was a boy of at least ordinary intelligence, and, while his testimony is not ingenuous, it is impossible to read it without coming to the conclusion he had worked about and with this machine so long that he knew its manner of operation, the position of the cogwheels, the office they performed, and that if he got his fingers between the cogwheels he would be injured.  It is difficult to see how any warning would have helped him, for he already knew the danger. *Palmer* v. *Harrison*, 57 Mich. 182 (23 N. W. 624); *Ertz* v. *Pierson*, 130 Mich. 160 (89 N. W. 680).  The plaintiff was entirely familiar with the

manner of operating the machine. For months he had used it himself. He had planed lumber from 4 feet to upwards of 12 feet in length, and he had seen his brother plane the 18-inch lengths, and had done so himself for an entire day before the accident. The case is unlike *Allen* v. *Jakel*, 115 Mich. 484 (73 N. W. 555), where a girl but 14 years of age, entirely without experience, was employed upon a mangle. It is also unlike the case of *Ertz* v. *Pierson*, 130 Mich. 160 (89 N. W. 680), where an inexperienced boy was set to operating a feed cutter without being instructed as to the manner of doing the work. In the last-named case there was a dissenting opinion, while it was stated in the prevailing opinion that the case was very near the border line. It is believed no case can be found where, under a record like this, a defendant was held liable. The principles announced in *Palmer* v. *Harrison*, 57 Mich. 182 (23 N. W. 624), *Borck* v. *Nut Works*, 111 Mich. 129 (69 N. W. 254), *Journeaux* v. *E. H. Stafford Co.*, 122 Mich. 396 (81 N. W. 259), and cases there cited, control this case. A verdict should have been directed for defendant.

Judgment reversed, and a new trial ordered.

HOOKER, C. J., CARPENTER and MONTGOMERY, JJ., concurred with MOORE, J.

GRANT, J. I think no new trial should be granted.