ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY

COMPANY v. COPELAND.

## Opinion delivered May 4, 1914.

1. MASTER AND SERVANT—SAFE PLACE TO WORK.—A master must exer-
cise ordinary care to provide his servants a reasonably safe place
in which to work, and reasonably safe instruments with which
to work. (Page 64.)

2. MASTER AND SERVANT—SAFE APPLIANCES AND PLACE TO WORK—TEST.—
The test of a master's duty in furnishing appliances and a place
to work is what a reasonably prudent person would have done in
such a situation. (Page 64.)

3. MASTER AND SERVANT—DUTY TO SERVANT.—The duty imposed upon
a master does not require him to use every possible precaution to
avoid injury to his servants, but he is only required to use such
reasonable precaution to prevent accidents as would have been
adopted by prudent persons prior to the accident. (Page 64.)

4. RAILROADS—BLOWING WHISTLE—NEGLIGENCE.—The act of blowing a
locomotive whistle more than eighty rods from a grade crossing,
is not in itself an act of negligence. (Page 67.)

5. MASTER AND SERVANT—INJURY TO SERVANT—UNFORESEEN ACCIDENT.—
Plaintiff, a locomotive engineer, was injured by the blowing of the
whistle of another passing locomotive; held, the accident was out-
side the range of ordinary experience, and the master, in the
exercise of ordinary care, was not bound to foresee and guard
against it. (Page 67.)

Appeal from Grant Circuit Court; *W. H. Evans,*
Judge; reversed and dismissed.

STATEMENT BY THE COURT.

H. A. Copeland instituted this action against the St. Louis, Iron Mountain & Southern Railway Company to recover damages for personal injuries alleged to have been sustained by him while in the employment of the defendant company. The facts are as follows:

For a mile or more south of the station at Little Rock, Arkansas, the line of the defendant railway company runs through the corporate limits of the city and across certain of its streets. Some of the streets have overhead crossings and some cross the railroad on grades. The railroad company has double tracks for several miles south of the station. At Twelfth Street, where it crosses the railroad, there is an overhead crossing, commonly called a "viaduct." The overhead crossing is a bridge twenty-four feet above the track and about twenty feet wide. It has a steel approach and steel girders. The girders rest on concrete abutments on either side of the cut through which run the tracks of the railroad company. From the center of one track to the center of the other is thirteen and three-tenths feet, and from the inside rail of one track to the inside rail of the other track is eight and six-tenths feet. The cut is deepest at Twelfth Street, and begins to become more shallow at Tenth Street. On the 3d of January, 1913, the plaintiff was engineer on a work train, whose engine was headed north—that is, toward the station at Little Rock. He stopped the train with the engine right under the Twelfth Street viaduct, for the purpose of unloading some chat. The foreman in charge of the work train gave him a signal, and he stuck his head out of the cab window to see if the foreman got on the footboard. While in that position, a passenger train from the south, coming into Little Rock, passed on the other track. While the engine of the passenger train was passing the plaintiff's engine, the engineer on the passenger train was blowing his whistle. The plaintiff testified that he was only about five or six feet away from the whistle on the passenger, but that it was a little above his head; that

as soon as the sound struck his ears it sounded like somebody had hit him on the head, and that his ears commenced to roar and rattle from that instant; that for about a week it seemed like his head was full of water; that afterward there was a popping and cracking just like you hear in a telephone receiver, and that he finally became deaf in his left ear; that the hearing in his right ear is defective; that he can not see out of his left eye, and can not see to read out of his right eye. A physician who examined him testified that plaintiff was suffering from traumatic neurosis, and that he had a very severe form of it; that this might be caused by a severe shock or injury. Other witnesses for the plaintiff stated that the whistle was blown unusually loud on that morning. Physicians who examined plaintiff testified for the defendant that they had examined the plaintiff's left ear, and that it appeared to be entirely normal, and that the drum of the ear did not appear to be in any way injured. They also stated that his eyes did not appear to be injured. Other witnesses for defendant testified that the whistle which plaintiff alleges caused the injury was a standard passenger train whistle known as a "chime whistle;" such as is used on all first-class railroads in this and other States.

The physicians who testified in favor of the defendant stated they believed from the examination they had made of plaintiff, that his injuries were feigned, and stated that they had never known or heard of such an injury having been inflicted upon any one by the blowing of a whistle under the circumstances described by the plaintiff. Other evidence will be stated or referred to in the opinion. The jury returned a verdict for the plaintiff and the defendant has appealed.

*E. B. Kinsworthy* and *T. D. Crawford,* for appellant.

1. There was error in the court's charge in the giving and refusal of instructions. The general rule is that a master must exercise ordinary care to provide his servants a reasonably safe place in which, and reasonably safe instruments with which, to work. It was improper

to submit to the jury whether plaintiff was in a position of "apparent danger," and whether the engineer knew it. *Ry. Co.* v. *Kimbrell,* 40 A. L. R. ........; 98 Wis. 416; 80 Ark. 263; 90 *Id.* 145; 35 *Id.* 615.

2. Plaintiff assumed the risk. 90 Ark. 387.

3. It was the duty of appellant to blow the whistle. Kirby's Digest, § 6595.

4. A master is not bound to anticipate accidents resulting from physical defects of an employee. 3 Labatt, Master & Servant, § 1044, p. 2760; 104 Pac. 809; 64 Am. St. 538.

5. Knowledge is an element of master's liability. 44 Ark. 524; 3 Labatt, Master & Servant, § 2021, p. 2707; § 2025, p. 2716.

6. A master is not an insurer. 90 Ark. 149; 35 *Id.* 614; 80 *Id.* 263; 92 *Id.* 143; 3 Am. Rep. 144. There must be some neglect of duty. 83 Md. 269; 92 N. W. 890.

7. Negligence is not a matter to be judged after the accident. 3 Labatt, Master & Servant, § 1042; 133. N. Y. App. Div. 314.

8. Previous safe and successful operation of the instrumentality is conclusive. 3 Labatt, § 1036; 91 Cal. 48; 51 Hun. 519; 78 Mo. App. 39; 58 Am. Rep. 522; 115 N. Y. App. Div. 14; 18 L. R. A. (N. S.) 701; 61 Wis. 325; 184 Fed. 882; 60 Am. Rep. 433.

9. Master not liable for accidental injury. 1 White, Pers. Inj., § 33; 91 Ark. 260; 86 *Id.* 289; 92 *Id.* 138; 87 *Id.* 576; 97 *Id.* 576; 104 *Id.* 59; 97 *Id.* 160. As a corollary the master is only liable where the injury is the natural and probable consequence of the alleged wrongful or negligent act. 114 Mich. 512; 3 Labatt, § 1042.

10. Plaintiff assumed the risk of accidents. 1 White, Pers. Inj., § 357; 110 N. Y. App. Div. 208; 62 N. J. L. 540.

11. Appellant was guilty of contributory negligence. 90 Ark. 392; 41 Wash. 63.

*Hoeppner & Young* and *W. R. Donham,* for appellee.

1. It was a question for the jury whether or not plaintiff's position of danger was open and apparent

to the engineer. 64 Ark. 236; 69 *Id.* 619; 73 *Id.* 594. If so apparent, it was the duty of the engineer to abstain from giving the statutory signals. 77 Ark. 174; 89 *Id.* 270; 99 *Id.* 226.

2. If it is apparent that injury will result from blowing the whistle, it was the engineer's duty not to blow but to ring the bell. 53 S. W. 269; 77 *Id.* 174; 99 *Id.* 226.

3. It was not error to refuse to direct a verdict for defendant. 154 S. W. 203; 89 Ark. 154.

4. Upon the whole evidence the question of negligence, contributory negligence and assumed risk was properly submitted to the jury, and there is no prejudicial error.

HART, J., (after stating the facts). The general rule is that a master must exercise ordinary care to provide his servants a reasonably safe place in which, and reasonably safe instruments with which, to work. The test of a master's duty in furnishing appliances and a place to work is what a reasonably prudent person would have ordinarily done in such a situation. *Oak Leaf Mill Co.* v. *Littleton,* 105 Ark. 392. The duty of a master to exercise ordinary care to provide his servant a safe place to work requires that he shall anticipate all such dangers as will likely flow from the conditions of the place in which his servants work, and the appliances with which they are provided to work. But the master is not bound to foresee and provide against every possible accident. In other words, the duty imposed does not require the master to use every possible precaution to avoid injury to his servants, but he is only required to use such reasonable precautions to prevent accidents as would have been adopted by prudent persons prior to the accident. After an accident has occurred, it may be easy to see what would have prevented it, but that of itself does not prove, nor tend to prove, that reasonable or ordinary care would have anticipated and provided against it. Labatt's Master & Servant (2 ed), Vol. 3, § § 1042 and 1045. See, also, 26 Cyc. 1092, 1093; *Ultima Thule, A. & M. Rd. Co.* v. *Benton,* 86 Ark. 289; *St. Louis, K. & S. E. Rd. Co.* v. *Fultz,* 91 Ark. 260.

Tested by the above legal principles, is the plaintiff entitled to recover in this case? It may be said here that there is in this case no presumption created by statute to take the place of proof of negligence. The undisputed proof is that the whistle on the passenger engine, which plaintiff testified caused his injury, was a standard chime whistle, such as is used on all first-class railroads in this State, and such as is in general use on all first-class railroads in other States. It is true some of the witnesses for the plaintiff said that it was a louder whistle than the others in use on the defendant's engines, but they did not deny that it was a standard whistle and in general use by all first-class railroads. The court told the jury that, under the undisputed evidence that the whistle on the passenger engine was such a whistle as is used by careful and competent railroad companies, and that it was not negligence on the part of the railway company to use the whistle. There was no evidence tending to show that the engineer wantonly blew the whistle. That is to say, that he blew it for the purpose of scaring or annoying the plaintiff. Some of the witnesses for the plaintiff say that it was not necessary to blow the whistle at the place where plaintiff claims that he was injured. The Twelfth Street viaduct is two blocks from Tenth Street, which had a grade crossing. The passenger train was going in that direction. Kirby's Digest, § 6595, imposes upon railroads the duty of signaling for crossings. It provides that a bell be rung or a whistle blown at a distance of eighty rods from where the railroad crosses any road or street, and that the bell be kept ringing or the whistle blown until such road or street is crossed. Pursuant to this statute, the engineer blew the whistle to give warning of the approach of the train; and the act of blowing the whistle did not of itself constitute negligence. This brings us to the question of whether the situation of the parties made the blowing of the whistle an act of negligence. The plaintiff had stopped his engine under the viaduct and was leaning out of his cab window looking backward, when the whistle was blown. He says

the whistle on the passenger engine was a little above him, but was within about six feet of his ear when the engine passed. The plaintiff claims that the act of blowing the whistle as the train passed him caused him to lose the sense of hearing in his left ear, and the sense of sight in his left eye, and impaired his hearing and sight in his right ear and eye. If the plaintiff's testimony be true, his injury is a serious one, and it can be readily seen now how it could have been avoided; but it does not appear that any one anticipated it, or anything of that nature. Certainly, the plaintiff did not anticipate it. He was an engineer of experience. He knew the passenger train was running at a high rate of speed, and that the engineer on that train might at any moment see a person on the track which would render it necessary for him to blow the whistle as a warning of the approach of the train. Notwithstanding this, he exposed himself without hesitation to the risk, and this of itself is strong proof that he did not fear or expect that any injury could result to him. The engineer of the passenger train says he blew the whistle for the crossing, and that he had no cause to believe that the blowing of the whistle would injure any one. That he did not see the plaintiff; that he was looking ahead because he was approaching a crossing that might be a place of danger. That he had blown the whistle many times as he passed another engine on a sidetrack. That no one had said to him that the sounding of the whistle under such circumstances was likely to cause injury to sight or hearing. · That he had been placed in similar situations, and had had his ears to tingle a little, but no bad effect was afterward apparent. The physicians who testified in behalf of the defendant stated that they had examined the drum in both of plaintiff's ears, and that they were in an absolutely normal condition. That the condition of the outer ear of plaintiff, which was affected, was normal. That they did not think the blowing of a whistle close to the ears of persons, which did not break the drum, could affect his sight. That it might affect his ear. That from an exam-

ination of his ears they did not think it possible for plaintiff to have been injured in the way he claims to have been injured, except from the fact that he is so injured. That they had no knowledge of such an injury having happened before.  Other evidence for the defendant tends to show that no accident of this kind had ever happened before, on defendant's line of road, and that no such accident had ever been known to occur.  The facts bring the case within the principle of a mere accident occurring unexpectedly, and almost unaccountably.  The accident was exceptional in character, and was due to causes of such rare occurrence that the defendant in the exercise of ordinary or reasonable diligence, could not have anticipated that such an injury would likely result.  Therefore, it was not required to foresee and provide against the happening of such an extraordinary accident.  As said by Mr. Justice Cooley in the case of *Sjogren* v. *Hall*, 53 Mich. 274:

"So far as there is a duty resting upon the proprietor in any of the cases, it is a duty to guard against probable dangers; and it does not go to the extent of requiring him to render accidental injuries impossible."

Taking all of the facts into consideration as they existed at the time of the injury, we do not think the plaintiff showed that the defendant was negligent in failing to anticipate and provide against the occurrence of the injury.  To hold otherwise, would be to disregard the well settled law upon the subject and to make the master an insurer of the safety of his servant.  The accident was outside of the range of ordinary experience, and the defendant, in the exercise of ordinary care, was not bound to foresee and guard against it.

The case having been fully developed, the judgment will be reversed and the cause of action will be dismissed.