## KRANTZ v. DETROIT UNITED RAILWAY.

1. NEGLIGENCE—PERSONAL INJURIES—STREET RAILWAYS.

   In an action for personal injuries, evidence that the motor-man of a street car noticed a man ahead of him driving a horse close to the track, that he sounded the gong and slowed up in passing the horse and driver, that after the driver passed an obstructing automobile, he turned the horse toward the curb, which threw the flank of the horse toward the car and the car struck him, shoving him on the icy pavement onto the sidewalk and injuring plaintiff, a pedestrian, *held*, not to show actionable negligence on the part of the motorman or the driver of the horse.

2. SAME—PROXIMATE CAUSE.

   *Held*, that the guiding of the horse toward the curb was not the proximate cause of the injury.

3. SAME—ACCIDENTAL INJURIES—RIGHT TO RECOVER.

   Damages cannot be recovered for purely accidental injuries; if there is no negligence on the part of the defendant, there can be no recovery, no matter how free from negligence the plaintiff may be.

Error to Wayne; Webster (Clyde I.), J.   Submitted April 11, 1919.   (Docket No. 34.)   Decided May 29, 1919.

Case by Rose Krantz against the Detroit United Railway and the Michigan Builders' Supply Company for personal injuries.   Judgment for defendant railway on a directed verdict, and *non obstante veredicto* the supply company.   Plaintiff brings error.   Affirmed.

*Dohany & Dohany*, for appellant.

*Corliss, Leete & Moody* and *A. B. Hall*, for appellee railway.

*Keena, Lightner, Oxtoby & Hanley*, for appellee supply company.

Authorities discussing the question of injuries received by street car collisions with vehicles and horses are collated in a note in 25 L. R. A. 508.

STONE, J. This is an action for damages for personal injuries received by the plaintiff. On the 5th day of January, 1914, at about the hour of 5 o'clock p. m., the plaintiff, then a young woman 18 years of age, was walking west along the south side of Forest avenue east (there being double street car tracks in the center of the avenue), between Dequindre street and St. Aubin avenue, when she was injured by reason of a horse which was being driven by an employee of the defendant Michigan Builders' Supply Company, and owned by it, being hit by a street car operated by the servants of the defendant Detroit United Railway, thereby causing the horse to slip or slide upon the ice against and upon the plaintiff, who was at the time on the sidewalk. The horse had been unhitched from its wagon, near Dequindre street, and was being driven to the barn, and the most convenient way to reach the barn was to go along the south side of Forest avenue. There was one, and some of the witnesses said two, automobiles parked between the curb and the south street car track about opposite the San Telmo cigar factory there situate. The driver of the horse, who was going in the same direction as the street car, turned toward the tracks to pass the parked automobiles, after looking backward and seeing the street car approaching and crossing the steam railroad tracks at Dequindre street, about 200 feet to the west. Just as the driver of the horse arrived at the front of the front automobile which was facing east, he being behind the horse—he testified that the following happened:

"Well, as I was turning the horse away from the side of the track, the car brushes by his hind hip and gave him a little shove, and shoved him on his knees and he went east,"

—and the horse slid over the curb on the ice, and onto the sidewalk and injured the plaintiff.

At the conclusion of the evidence, the trial court, upon motion, directed a verdict in favor of the defendant Detroit United Railway, on the ground that there was no evidence of any negligence on its part, but submitted the case to the jury as against the defendant the Michigan Builders' Supply Company, reserving the right to direct a judgment *non obstante veredicto*. The jury returned a verdict for plaintiff in the sum of $500, which the trial court later set aside and ordered judgment for both defendants, which was duly entered.

The plaintiff has brought error, and she bases her two assignments of error upon the action of the trial court, *first,* in directing a verdict for the defendant Detroit United Railway; and *second,* in setting aside the verdict for plaintiff, and entering judgment for defendant Michigan Builders' Supply Company.

1. Invoking the rule that the most favorable construction that the testimony will admit of must be indulged in behalf of plaintiff, under such circumstances, plaintiff's counsel urge that it was error for the court to direct a verdict in favor of the defendant Detroit United Railway. Disconnected parts of the testimony of Robert Johnson, the driver of the horse, are referred to by counsel. All of the testimony has been read. Among other things he testified:

"I was driving the horse without any wagon, just with the lines. * * * I drove along by the side of the track, south side. I was following the horse right behind with the lines. * * * The horse was never on the railroad track. When I started to turn, I started to turn the head of the horse toward the curb, just pulled his head towards the curb, and that threw his rump just a little towards the car. His head, I tried to pull him towards the curbstone."

At the time of the accident the horse had got east of, and beyond, the automobiles. The witness had tes-

tified that when he first noticed the street car it was crossing Dequindre street. He further testified:

"As I was passing the automobiles, I looked back again to see the street car. It was gaining ground on me so, until I hurried my horse to get away. It was going faster than when it was crossing Dequindre street. I clucked him (meaning the horse) up, and slapped him a little with the line and hurried him up and said 'Go on Billie,' and I had turned in towards the curb, or started to turn before the street car got to us, and it was the handhold on the front of the car that hit the horse. The street car went half a block after hitting the horse. I never lost the lines or the reins on the horse that day. The horse was east of the automobiles when the street car hit him. He was as far away from the automobiles as this table is long (indicating). Just before I got to the automobiles, I looked back and seen the car coming. As I was driving beside the automobiles, I looked back again, and saw the car coming at a faster rate. Then I tried to speed the horse up, to make him go by, and as the horse's head got to the end of the automobile, I began to curve him to the south side of the track."

John A. McGraw, the motorman in charge of the street car, was called by plaintiff for cross-examination, under the statute. Among other things he testified:

"I don't remember what rate of speed I was traveling at the time. My best judgment would be, five or six miles per hour, I imagine when I passed the horse. That is much slower than my regular rate of speed. I was traveling so slowly because the horse was so near the track, was walking near the track, and I am always supposed to slow up when there is anything near the track, and that is why I slowed up my car. When traveling at five or six miles per hour I can stop my car very easily, within a short distance if the rail is not slick. I don't remember the condition that the rails were in that night, in what distance I could stop my car at five or six miles an hour, 20 or 25 feet, I

suppose. I saw the horse just after I had passed Dequindre street, and he and the man driving him were driving close to the track, something like four or five feet from the track. I slowed up because a horse is liable to walk on the track most any time, or be jerked on the track or something, so it is the rule of the company to slow up.

"*Q.* What speed had you attained after you passed Dequindre street, what is your best judgment?

"*A.* Well, probably ten miles per hour.

"*Q.* Then you slowed down from ten miles per hour to five miles per hour or thereabouts when you came up to the horse?

"*A.* Yes, sir.

"*Q.* And the horse was in full view of you all the time you were approaching?

"*A.* Yes, sir."

This is the substance of the testimony upon which the plaintiff relies, tending to show negligence on the part of the defendant Detroit United Railway. It is undisputed that the street car made a full stop at Dequindre street. It will be noted that at no time was the horse upon the track, and it is doubtful whether the driver was upon the track at any time. McGraw also testified:

"Just as I was passing the horse the driver jerked the line next to the right hand side and hit the horse, and the horse did not walk away from the car but swung around until his hind part hit the car. I knew the car had hit him."

This witness did not agree with Johnson that it was the front part of the car that hit the horse, but testified that it was some place behind the front door. It is true that the car did not stop until it reached St. Aubin avenue, but the motorman testified that he let the car drift to that point in order to get away from the place of collision. He said:

"I just drifted ahead so that I would be out of the way, that is all."

Under the circumstances as they here appear, it is difficult to find any evidence of negligence on the part of the defendant Detroit United Railway. The car had the right to move ahead, as there was no obstruction on the track, and it would seem that the motorman exercised due caution, it appearing undisputed that he had rung the gong before coming up, in passing the horse. We think the trial court did not commit any error in directing a verdict for that defendant.

2. As tending to show negligence on the part of the defendant Michigan Builders' Supply Company, counsel for plaintiff points out the following testimony of Thomas Pioszak. This witness was a pedestrian upon the south side of Forest avenue, going east on the sidewalk; and the following is relied upon:

"The first thing I noticed that attracted my attention to the horse and driver, was the horse walking up when he was behind the automobile and the fellow was forcing the horse in between the automobile. I noticed him forcing the horse in—I saw him getting the horse in between the automobile and the street car track before that. He whaled the horse with the lines to make the horse pick up. I could not tell you if he jerked on either line, but I noticed he had hold of the line in each hand, and then he always hit the horse and forced him in between the car. And after he got in front of the automobile he steered towards the right and the hind part of the car hit the horse on the back and the horse slid on the ice, and the girl was right there. It was the haunches, the rear part of the horse that got hit. The front part of the car did not hit the horse. It was about three-quarters of the car past the horse already.

"*Q.* Now, what was it that turned the horse's head around to the right and his rear to the left so that it hit the street car, who did that?

"*A.* Well, he was trying to get more out of the way of the street car after he passed the automobile.

"*Q.* And the horse was walking very close to the street car track, was he not?

"*A.* No, sir, he was walking right into the automobile.

"*Q.* And went right into it, did he?

"*A.* No. He steered him after the car was beating him out, he thought he had room there to pass by.

"*Q.* And he was traveling alongside of the automobile was he with the horse, when he reached the automobile?

"*A.* Right toward the automobile. (Continuing.) But when he got to the automobile then he traveled beside it.

"*Q.* When he started to go beside the automobile, where was the car?

"*A.* It was coming right up even with him.

"*Q.* It was just coming even with him?

"*A.* Yes.

"*Q.* When he started to go past the automobile, is that right?

"*A.* No, even with the automobile.

"*Q.* Well, I asked you when he started to go by the automobile; in other words, when the head of the horse was just in line with the rear wheel of the automobile, where was the street car?

"*A.* Well, it was about five or ten feet behind him, and then he walked the length of the automobile; even with the rear wheel of the automobile as he was starting to pass it. I saw that horse walking alongside the automobile, and it was trying to turn toward the curb when the street car hit him. The street car was not slowing up before it hit him. It did not slow up at all. After it passed the railroad crossing it did not slow up at all, it stopped on St. Aubin.

"*Q.* Where was the girl standing when she was hit, do you recall?

"*A.* Yes, she just stopped, just for about a second, not that long.

"*Q.* I know, but stopped where?

"*A.* Well, on the sidewalk, I could not tell you if it was on the sidewalk or the curb or what, because it is all covered with ice. The driver had hold of the lines on the horse all the time."

This is the substance of the testimony referred to by plaintiff's counsel as requiring the submission of

the case to the jury, as against the defendant Michigan Builders' Supply Company.

It will be observed that the witness Pioszak testified that the horse had passed the automobile, before his head had been turned by the act of Johnson in pulling upon the rein. The distance from the south track to the curb was about 11 feet. The horse appears to have been pushed by the collision with the street car in a southeasterly direction. There was so much ice there that the witnesses agreed that one could not tell where the curb was. It is manifest, from the undisputed testimony in the case, that the horse was never on the track itself, but was in the street far enough away from the car to allow it to pass; and the only reason why the horse was struck by the car was that the driver attempted to pull his horse out toward the south curb. By pulling on the right rein the horse's head was turned to the south, and his flank, in turning about, struck the car. Was it actionable negligence for the driver of the horse to pull upon the right line to get the horse farther away from the street car track and the car? It seems to us that it was a natural, prudent thing for the driver to do, and that the hitting of the street car against the horse was an unexpected and unforeseen event, occurring without the will or design of the person whose mere act caused it. That the result was an unexpected, unusual, or undesigned occurrence cannot be doubted; in other words, that it was a mere accident, and cannot justly be said to be a negligent act on the part of the driver. The injury was the result of such an accident as no one would have been likely to foresee. The precise accident that occurred might never occur again. We think the plaintiff failed entirely to make out a case of negligence, and that the court below was right in entering a judgment for the said defendant.

It cannot be said that the defendant or its servant, in doing the natural act of guiding the horse to the right, was guilty of negligence, because of an accident that was not likely to happen. Damages cannot be recovered for purely accidental injuries. *Sjogren* v. *Hall,* 53 Mich. 274; *Lewis* v. *Railway Co.,* 54 Mich. 55 (52 Am. Rep. 790) ; *Munn* v. *Telephone Co., ante,* 201.

If the evidence does not show any negligence on the part of the defendant, there can be no recovery, no matter how free from negligence the facts show the plaintiff to be. 20 R. C. L. p. 185.

The guiding of the horse to the right, under the circumstances, was not the proximate cause of the injury.

The judgment of the circuit court is affirmed.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred.