JOSEPHINE BALLE, ADMINISTRATRIX, ETC., V. THE
DETROIT LEATHER COMPANY.

*Master and servant—Negligence—Assumption of risks by employé.*

1. A servant is held to assume the ordinary risks of the business
   upon which he enters, so far as those risks at the time of his
   so entering are known to him, or should be readily discernible
   by a person of his age and capacity, in the exercise of ordinary
   care.
2. In this case a verdict was properly directed in favor of defend-
   ant, there being no evidence to go to the jury upon either
   allegation of negligence.

Error to Wayne.    (Brevoort, J.)    Argued October 9,
1888.    Decided January 11, 1889.

Negligence case.    Plaintiff brings error.    Affirmed.    The
facts are stated in the opinion.

*James. H. Pound,* for appellant, contended.

1. Facts as to the establishment of contributory negligence should
   go to the jury; citing *Smith v. Car Works,* 60 Mich. 508; *Myn-
   ning v. Railroad Co.,* 59 Id. 259; *Staal v. Railroad Co.,* 57 Id.
   239; *Guggenheim v. Railway Co.,* Id. 488, 494; *Klanowski v.
   Railway Co.,* Id. 525; *Geveke v. Railroad Co.,* Id. 589; *Hasse-
   myer v. Railroad Co.,* 48 Id. 207; *Teipel v. Hilsendegen,* 44 Id.
   461.
2. All of the law upon the subject of the mutual rights of master
   and servant must be taken with the qualification that the
   master shall have taken care not to expose his servant to
   unreasonable risk; citing *Hutchinson v. Railway Co.,* 5 Exch.
   343 (19 L. J. Exch. 296); Smith, Mast. & Serv. 257, 263.
3. As to duty of master to employ competent fellow-servants, and
   to furnish suitable machinery, etc., counsel cited *Seaver v.
   Railroad Co.,* 14 Gray, 466; *Cayzer v. Taylor,* 10 Id. 274;
   *Coombs v. Cordage Co.,* 102 Mass. 572; *O'Connor v. Adams,*
   120 Id. 427; *Flike v. Railroad Co.,* 53 N. Y. 549; *Corcoran v.
   Holbrook,* 59 Id. 520; and as to duty to provide a suitable place
   in which the servant is to work, cited *Railway Co. v. Jackson,*
   55 Ill. 492; *Railway Co. v. Arnold,* 31 Ind. 174; *Keegan* ⁻

*Kavanaugh,* 62 Mo. 230; *Swoboda v. Ward,* 40 Mich. 420; *Huizega v. Lumber Co.,* 51 Id. 272; *Smith v. Car Co.,* 60 Id, 504.

4. The master must, so far as he can, avoid placing the servant in places exposed to extraordinary danger and risks; citing *Wonder v. Railroad Co.,* 32 Md. 411; *Hardy v. Railway Co.,* 76 N. C. 5; *Hill v. Gust,* 55 Ind. 45; *Hough v. Railway Co.,* 100 U. S. 213, 226; *Railroad Co. v. Herbert,* 116 Id. 642.

5. Where there is any doubt, whether or not the servant was, or ought to have been, so acquainted with the risks and dangers causing the injuries as to be deemed to have assumed them, is for the jury; citing *Rummell v. Dilworth,* 111 Penn. St. 343; *Bunnell v. Railway Co.,* 29 Minn. 305.

*Henry A. Harmon,* for defendant, contended:

1. The master is under no higher duty to provide for the safety of his servant than is the servant to make such provision, and if their knowledge or ignorance in respect to the character of the machine is equal, so that each is without fault, or in equal fault, the servant cannot recover damages of the master; citing 2 Thomp. Neg. 1008; Cooley, Torts, 551; *Railroad Co. v. Austin,* 40 Mich. 247; *Swoboda v. Ward,* Id. 423; *Railroad Co. v. Smithson,* 45 Id. 212.

LONG, J. This is an action of trespass on the case, brought in the Wayne circuit court, to recover damages resulting from the death of Peter Balle, by the negligence of defendant, while he was employed in defendant's tannery in the city of Detroit. The court below on the trial directed a verdict for defendant. Plaintiff brings error.

Balle was about 38 years of age at the time of his death. He left a widow and six children surviving him. He entered defendant's employment on January 3, 1887, and was drowned in one of defendant's tan vats, February 18, following. Before entering the service of defendant, he had worked at the pipe foundry and stove-works in Detroit, and for a time had been a teamster.

The defendant carries on a tannery. On the floor of the building where this business is carried on, called the "beam-house," there are 22 vats. These vats are nine feet square and six feet deep, and come up with the

level of the floor. These vats are located, ten on each side of the room and two on the inside.

The employment of the deceased consisted in taking hides from vats 1 and 2, and putting them into wash-wheel 1, at the south end, which was the only place they could be put in.

The following is a diagram of the floor, showing the vats and wash-wheels:

The body was found in vat 1, with the head towards the north. The shaft runs over these vats lengthwise, upon which slowly revolve paddle-wheels.' These wheels are about 18 inches from the edge of the vats, and a man standing on the edge could not be struck by them. The space between the vats and wash-wheels consists of a level floor four feet wide, a trough or gutter about six inches wide, and the edge of the vats about two inches wide. In this space, at about the point indicated on the diagram, there was a box about three feet high, three feet wide, and four feet long, thus leaving a space of level floor about 14 inches wide, the trough or gutter of about six inches, and two inches on the edge between the box and the vats.

The employment of plaintiff's intestate was in taking these hides from the vats and putting them into the wash-wheels. In doing this he took one in each hand, and dragged them diagonally from the edge of the vats, where they laid after being pulled out, to the wash-wheel, walking backwards from the vat to the wash-wheel. In the course of doing this work the passage-way became very greasy and slippery. Prior to January 3, and a short time before the deceased entered upon his work there, the box described above, containing hen manure used in tanning, was placed in the position described.

It is claimed by the plaintiff that the deceased was put to work there, and continued such employment, without any instruction or warning from his employers of the danger to be anticipated in the manner of doing the work, or in the place where he was working, and that on that morning, while so drawing hides to the wash-wheel, he fell, and was found drowned in the vat; that it was apparent that he was drawing hides in the usual way when he fell, from the fact that the ends of two

73 MICH—11.

hides were found trailing into the vat where deceased was found.

The wheel in this vat had been put in motion by the foreman on the opposite side, and without any warning to the deceased. No one saw the deceased fall, and his death was not discovered until he was subsequently missed from his place there, when the machinery was stopped, and search was made, resulting in the finding of deceased in the vat.

It is claimed that defendant was negligent in two particulars:

1. In allowing the box to be where it was.
2. In starting a wheel adjoining the place where the deceased was working.

A witness named Lockenfritz was called by plaintiff, and gave testimony in reference to the starting of the wheel. The witness stated:

"I saw Peter Balle go to work on the morning of his death. His work was between the two sets of wheels, taking hides out of one vat, and putting them in another. * * * When he started to work in the morning, he was on the west side of the vats. * * * I stood on the east side of the wheel, opposite from Balle. The bate-wheels were started by Balle the first thing in the morning, and, after running awhile, they were stopped, and then Balle was to take the hides out, and then I had to start the other wheel from the opposite side. The superintendent gave me orders to start the other wheel. It was the rule, and I had to do so; every morning I had to start the wheels, and let them run a quarter of an hour in an hour. When I started up the vat next to the one at which Balle was working he was there then. The wheel in the vat Balle was working at was not going at all."

This is substantially all the testimony given, bearing upon the question of negligence in starting this wheel.

It appears that at the time Balle entered the employ-

ment of defendant these wheels were being run in the same way as on the morning of the accident. In the morning Balle himself would start the wheel, and, after it had run a quarter of an hour, it was stopped, and the hides taken out, when the other wheel would be set in motion. This was the customary and every-day work there in the beam-room. The wheels themselves were some 18 inches from the sides of the vats, so that in making their revolutions no one could be struck with the paddles. Balle knew the time when the wheels were to be started, and the time they were to run each hour. It was not negligence to run them, and the manner in which they were stopped and started was well known to the workmen there, and no one could be injured by them in working at the place where Balle was put.

The wheel was started in the usual and ordinary way, and there is no testimony which would justify the inference that there was any negligence in so starting it, or that it had anything to do with the accident. It nowhere appears how Balle came to fall into the vat, or what, if anything, occasioned the fall.

The claim made by plaintiff's counsel, that the defendant was negligent in allowing this manure box to be where it was, has as little force. It is not pretended that there is any evidence whatever that the box occasioned the fall, except the position in which the hides were found. That he may, in backing up, have fallen over this box, is possible, and have thus been precipitated into the vat. There is, however, no proof of the fact.

Assuming, however, that the defendant was negligent in placing the box there, and that the deceased, in moving backwards, stumbled against it, and fell into the vat, thus losing his life, yet, as a matter of law, the plaintiff, under the circumstances here shown, would have no right

to recover. The box was there in the same place when Balle entered defendant's employment. He had worked there every day for nearly six weeks, and, if there was any danger in the work with the box in that position, it was as fully known to him as to the defendant. The box itself was not a dangerous thing, any more than were the vats and the wheels. He had made no complaint of the box being there, except that it was in his road, and the idea that it was dangerous to leave it there very likely never occurred to any one in the room. It was left there for the convenience of using the hen manure contained in it in the vats, for tanning, and was kept there for that purpose. Balle was 38 years of age, strong, with good eye-sight, and laboring under no physical disability. He saw the box there every day, and worked around it. It is not claimed that he was induced to continue his work there upon the promise of the defendant that the box should be removed.

It is well settled that a servant is held to assume the ordinary risks of the business upon which he enters, so far as those risks at the time of his entering upon the business are known to him, or should be readily discernible by a person of his age and capacity, in the exercise of ordinary care. 1 Shear. & R. Neg. § 94. The same doctrine is laid down by this Court in *Swoboda v. Ward*, 40 Mich. 423, and is too well settled to need further discussion.

The court below very properly, under the evidence given, directed a verdict for the defendant. There was no evidence to go the jury upon either of the questions raised.

The judgment of the court below must be affirmed, with costs.

The other Justices concurred.