DAVID TOWLER, PLAINTIFF IN ERROR, v. NEW JERSEY
    ADAMANT MANUFACTURING COMPANY, DEFENDANT
    IN ERROR.

Argued June 2, 1909—Decided November 8, 1909.

When. a servant at work on a machine or appliance provided by the
    master discovers it is out of order, and promptly reports that fact
    to the master or his proper representative, who promises to have
    the proper repairs made, and the servant thereupon continues his
    work, the questions whether the servant apprehended danger to
    himself, and should have been understood by the master as com-
    plaining of such danger, and whether the servant was justified in
    accepting the promise of repair as predicated on such
    understanding, will ordinarily be for the jury.

On error to the Hudson Circuit Court.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON
and PARKER.

For the plaintiff in error, *Samuel Kalisch, Jr.*

For the defendant in error, *Frederick J. Faulks.*

The opinion of the court was delivered by

PARKER, J. This writ of error brings up for review the
action of the trial court in directing a verdict for the defend-
ant below. Plaintiff was an employe of defendant, and while
at work in defendant's factory for the manufacture of wall
plaster, lost the sight of one eye by reason of lime or some
other substance flying into his eye from the apparatus at which
he was working. This was called an adamant mixer, and con-
sisted of a hopper set in the floor and communicating with a
mixing box below which contained the mixing machinery.
Plaintiff's task was to place the ingredients of the wall plaster
in the hopper, and at a signal by bell from the floor below,
turn a wheel, which opened two long and narrow trap doors
in the hopper and let the gauge, as it was called, down into

the mixing box, when the trap doors would be closed and a fresh gauge made ready in the hopper for the next signal. The top of the hopper was open, and about six inches above the floor, and the claim of the plaintiff was that the employer had permitted the apparatus to get out of order so that whereas, ordinarily, the dust and fragments of lime and other ingredients of the gauge would fly up only about as high as the top of the hopper, when the trap doors were opened on the day of the accident they flew up three or four feet, and finally a piece or pieces of lime flew into plaintiff's eye and destroyed its sight. Plaintiff ascribed the accident to the fact that a strip of leather belting that had been fastened to the inside of the hopper at the edge of its opening leading into the mixing box, and which, as he claimed, had prevented the particles from flying too high when the trap doors were opened, had been allowed to become partially detached and hung down at one end, permitting the escape of the ingredients upward through the opened trap doors when churned about by the machinery in the mixing box. On the part of defendant it was denied that the leather was intended for any such purpose, or did or could have any such effect as to protect the operator, but this was properly treated by the court as a jury question.

It appeared on plaintiff's case that on the day of the accident, soon after he began work in the morning, he noticed that the material flew up higher than usual, and on examination discovered that the leather was loose; that he went and reported that fact to the superintendent, who told him to go ahead with the machine, that he would have it looked after; that plaintiff accordingly resumed work, and in the afternoon the accident took place. Another witness testified that he heard plaintiff tell the superintendent that "the mill was out of order," and that the superintendent made the reply already quoted.

On cross-examination plaintiff testified in part:

"*Q.* You were afraid you would get some in your eyes?

"*A.* I noticed to see what the trouble was; I didn't know whether I would get it in my eyes or not.

"*Q.* You were afraid you might get it in your eyes?

"*A.* I didn't know what would happen, but I noticed the machine was out of order.

"*Q.* If you had been afraid of getting it in your eyes, would you have reported it to Mr. Dey?

"*A.* No, sir.

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

"*Q.* You were afraid if the box was not fixed, it would come up so high that some of it would get into your eyes, and that is what did happen?

"*A.* Yes."

The verdict for the defendant was directed upon four grounds, which were specifically stated by the trial court as follows:

*First.* The plaintiff should make a case which conforms to the pleadings; he has not done that in this case.

*Second.* There is nothing in this case to show any duty on the part of the defendant company, owing to this plaintiff, to make any repair of this slip for him, and, consequently, there being no duty to be neglected, there can be no negligence in the case.

*Third.* The notice that was given to Mr. Dey by the plaintiff, if any was given, was not a notice in the nature of a complaint which the plaintiff had any right to make and demand a performance of as a condition precedent or inducement to his remaining in the employ any longer, and, consequently, Mr. Dey had the right to consider that he was simply informing him of a defective condition which he had noticed, and which the correct working of the machine, in the interest of the company, made necessary to be repaired.

*Fourth.* That while it is true that if there were in this case a duty owing by the defendant to the plaintiff, which duty was neglected in that they permitted the machine to become out of repair, and that the plaintiff complained of that duty to the company, and that the company promised to repair, still, it is clear from the evidence in this case that the plaintiff continued in the face of an imminent danger which no reasonable person would have remained to incur.

To this ruling an exception was duly sealed and is assigned for error.

As to the first ground, the alleged variance did not exist. The declaration set out the fact of plaintiff's employment; a description of the apparatus; the duty of defendant to use due care that it should be in good order and to prevent its contents being thrown out; and a negligent failure in the performance of that duty whereby plaintiff was injured. This was entirely adequate to support the proof. If the trial court had in mind the additional facts that plaintiff was aware of the defect, complained of it and that there was an unfulfilled promise to repair, as constituting a variance, or rather, a failure fully to state the cause of action, the answer is that no such full statement was required. Plaintiff's knowledge of the danger would create an assumption of the risk unless avoided by a promise to repair; but assumption of risk, like contributory negligence, is a defence, and need not be confessed and avoided in the declaration. If by promise to repair the assumption of risk was in fact negatived, the right of action still remained unimpaired, on the original liability of the master for negligence in failing to use due care to have the machine reasonably safe. *Belleville Stone Co.* v. *Mooney,* 31 *Vroom* 323; *Thorpe* v. *Missouri Pacific Railroad,* 89 *Mo.* 650; 2 *S. W. Rep.* 3. As was said in *Dunkerley* v. *Webendorfer Machine Co.,* 42 *Vroom* 60, 62: "The view which we take does not rest the right of recovery upon the promise, but upon the master's negligence, and the fact that the application of the principle expressed in the maxim *volenti non fit injuria* is negatived by the servant's reliance upon the promise." The point was not even argued or briefed for defendant in error.

The fourth ground may be disposed of in a word, and is therefore taken up out of its order. It is enough to say that whether the danger was so imminent as that plaintiff, notwithstanding a promise to repair, ought not to have continued at work, and was guilty of contributory negligence in so doing, was, on the evidence, clearly a jury question, and as we view the testimony, might well have been resolved in

favor of the plaintiff. See *Dowd* v. *Erie Railroad*, 41 *Vroom* 451, 457.

The second and third grounds may conveniently be considered together. The second is, generally, that no duty of the master to make any repair of the machine was shown, and so far as not included in the third, would seem to imply that there was no evidence of any dangerous defect in the machine. It is sufficient to say that our examination of the testimony satisfies us that there was such evidence. The plaintiff and several other witnesses all testified that the dust and fragments were that day flying much higher than usual, that this was due to the partial detachment of the leather strip. A jury question was therefore clearly raised.

The other phase of the second ground is included in the third, and amounts to this: That conceding a defect in the machine, fraught with danger to the operator, which condition ordinarily the master should have remedied, nevertheless such condition was obvious to and actually observed by the plaintiff and the risk therefore assumed by him; and that this assumption of risk was not negatived by what he said to the superintendent, because there was nothing in what he said to indicate to the latter that plaintiff was complaining of a danger that he wished remedied for the sake of his own safety, but that plaintiff was simply calling his attention in the interest of the employer to a defective working of the machine. And a number of authorities are cited by defendant in error, for the proposition that it must fairly appear that the notice of a defective condition apprised the master that the servant apprehended danger, in order to make the master's promise to repair effective as justifying the servant's reliance on it. The authorities cited on this point, and others not cited, have been examined with care, as the precise point does not seem to have been heretofore raised in this state. In *Cicalese* v. *Lehigh Valley Railroad*, 46 *Vroom* 897, there was a loose handle bar on a hand car, and plaintiff's complaint was "the handle is all loose; we can't work with this." The question whether the complaint was of such a character as to apprise the master of an apprehended

danger was not raised at all, the reversal being put upon the ground that the complaint had not been made to anyone having the requisite authority to repair or to promise repair. Of authorities that have denied a recovery to the injured servant, those cited to us, and those independently examined, resolve themselves into four classes; all distinguishable from the present case and dependent for their decision on the application of some other principle. They are:

1. Cases in which the appliance was not dangerous originally and had not become so when the accident occurred.

2. Cases in which there was a complaint, but no promise to repair.

3. Cases in which recovery for negligence of the employer, if any, was barred by contributory negligence in working in the face of an imminent danger.

4. Cases in which the complaint was obviously of something else than of danger to the operator.

Of the first class are the cases of Gowen *v.* Harley, Leonard *v.* Herman and Higgins *v.* Fanning.

In *Gowen* v. *Harley,* 56 *Fed. Rep.* 973, plaintiff was injured while transferring a heavy box from one railroad car to another that stood alongside it and about five feet away, by dragging the box through the open side doors of both cars across the gap. He had asked for skids to make the work easier, but it affirmatively appeared that he never had considered the operation as dangerous. There was no appliance out of order and none to get out of order. The court held that the transfer was a simple act of manual labor, ·and that there was no primary neglect of duty by the master.

In *Leonard* v. *Herrmann,* 195 *Pa. St.* 222; 45 *Atl. Rep.* 723, there was an elevator of a type in ordinary use and in perfect condition. Plaintiff claimed that he was injured because the master had failed to keep a promise to supply guards in response to plaintiff's request, but the court said that as there was no defect in the apparatus and therefore as no duty to supply guards existed in the first place, none was raised by the complaint and promise.

A similar situation existed in *Higgins* v. *Fanning,* 195 *Pa. St.* 599; 46 *Atl. Rep.* 102, where plaintiff's hand was injured in a laundry mangle of a common type, and so far as the evidence showed, in good order; and the same ruling was made. From these three cases, therefore, we deduce the rule that if no condition exists that is so unsafe as to require the master, in the exercise of ordinary care, to remedy it, a promise to make the actual condition safer will not support an action for damages for injury occurring after the making of such promise, though it be not performed. But that rule · is not applicable to the present case.

Coming now to the second class, the case of *Industrial Lumber Co.* v. *Johnson,* 22 *Tex. Civ. App.* 596; 55 *S. W. Rep.* 362, turned on the point that no promise was made. So, also, did *McAndrews* v. *Montana Union Railway Co.,* 39 *Pac.* 85, in which plaintiff complained of a defective hand car and said he was afraid it would kill somebody, and the foreman said: "Get on that car; it is all right; we will soon get a new one." There may be some doubt of the correctness of the court's ruling that this was not a promise, but the case was doubtless properly decided on the additional point of contributory negligence, and in this aspect falls into the third class, as also does *Thorpe* v. *Missouri Pacific Railroad,* 89 *Mo.* 650; 2 *S. W. Rep.* 3, in which there was a complaint of an insufficient number of men to do the work, but no promise to supply them. The case was treated wholly on the lines of contributory negligence and a recovery by plaintiff sustained. The case is of no particular value in the present inquiry except that one of the headnotes may be worth quoting: "There is no waiver by a servant of his objection to such a defect if there has been any notice given by him, however timid and hesitating, so long as it plainly conveys to the master the idea that a defect exists and that the servant desires its removal."

In *Gulf, Colorado and Santa Fe Railway Co.* v. *Donnelly,* 70 *Tex.* 371; 8 *S. W. Rep.* 52, a recovery was upheld on the theory that though plaintiff complained of a defective condition of the railroad roadbed and there was either no promise to repair it, or an unreasonable delay in performance, the

condition was not one of obvious danger to himself while using a hand car, but to heavy trains drawn by locomotives for whose safety he feared. There was consequently no inference of assumed risk to be negatived.

Lastly, as to the fourth class. From the cases of *Tesmer* v. *Boehm,* 58 *Ill. App.* 609, in which the master was notified that repairs would be needed to get good work on the machine, and *Chicago Bridge Co.* v. *Hayes,* 91 *Id.* 269, where the complaint was of inconvenience in operation, the proposition is deduced by Mr. Labatt that "the general rule as to the effect of a promise (to repair, &c.), has no application to a case where neither the master nor the servant contemplated any additional danger to the servant in the use of the defective instrument, but only imperfections in the work done with it." *Labatt Mast. & Serv.,* § 422, *note* 8. This was the principle applied in *Balle* v. *Detroit Leather Co.,* 73 *Mich.* 158; 41 *N. W. Rep.* 216, where the death of plaintiff's intestate resulted from the position of a box around which he had worked for six weeks and complained of only as being in his way. So, also, in *International Railway Co.* v. *Turner,* 3 *Tex. Civ. App.* 487, where the complaint was by the foreman of the slowness of making up trains in a freight yard, and the deceased said it could be done faster if another man were supplied, and was afterward killed because the extra man was not supplied.

But if we accept this as correctly stating the law, the present case is still not within it, because in the cases cited, not only did plaintiff fail to show that the complaint was predicated on any anticipated danger to himself, but it affirmatively appeared that the question raised was one of personal convenience to the employe or more efficient performance of the work. The case of *Lewis* v. *New York and New England Railroad,* 153 *Mass.* 73; 26 *N. E. Rep.* 431, relied on by defendant in error, shows clearly a condition of anxiety on the part of the servant, not for his own safety, but for his master's pocket. In that case plaintiff had been for a long time familiar with the rotten condition of planking on a pier where his duties required him to go, and which was, to some

extent, used by the public. He had reported this condition a number of times and said that "somebody would get hurt yet," and promise of repair had been made. A reading of the testimony quoted in the opinion, however, supports the conclusion of the court that the complaint was manifestly made as bearing on the safety of the public and to protect the employer from damage suits, and not for the purpose of securing safety to the servant. This conclusion is fortified by the fact that the condition had been forming for a long time by gradual decay, and was not, as in the case at bar, the sudden and unexpected imperfection of a piece of machinery.

Lewis v. Railroad Company is the authority relied on in *Bodwell* v. *Nashua Mfg. Co.*, 70 *N. H.* 390; 47 *Atl. Rep.* 613, where the facts were that plaintiff's view was obstructed by escaping steam so that he caught his foot in a pile of planks and injured himself. He had complained a week before of the steam, and there had been a promise to correct it; but the point in the case seems to be that at the time of the complaint there was no danger from the planks, as they were not piled there at all until the very day of the accident, and it is obvious that neither master nor servant, at the time of the complaint and promise, could have had in mind any such danger resulting from the steam.

*Burlington and Colorado Railroad* v. *Liehe*, 17 *Colo.* 280; 29 *Pac.* 175, was another hand car case. The plaintiff had known of a defective rod for two months, and as the court read the testimony, had complained generally that the car was in bad condition and that the section foreman had promised to remedy that condition; but the court was unable to find any testimony that any specific complaint was made about the rod, and held that plaintiff should have pointed out the defect with more particularity; citing *Beach Cont. Neg.*, § 372, and *Crutchfield* v. *Railroad*, 76 *N. C.* 320.

*Hough* v. *Railway Company*, 100 *U. S.* 213, is a leading case. A locomotive engineer was scalded to death by escaping steam and water from his upset engine. The steam and water escaped because the whistle was insecurely attached to the boiler and broke off when the engine upset. The upset-

ting was caused by colliding with an animal on the track when the pilot of the engine was out of order. Deceased knew of the defective pilot, had complained of it, and there had been a promise to repair. The court sustained a verdict for plaintiff. It does not appear in the report whether the complaint was based on any danger apprehended by the servant.

The opinion in *Rothenberger* v. *Northwestern Consolidated Milling Co., 57 Minn. 461; 59 N. W. Rep. 531*, distinguishes *Lewis* v. *New York and New England Railroad, supra,* as a case in which the conclusion from the evidence was inevitable that the complaint was not based on any apprehension for the personal safety of the servant, and in effect puts on the master, in case of a complaint, the burden of showing that it did not relate to the servant's safety. "According to the best considered cases," says the court, "the real question to be determined is whether, under all the circumstances as they appear in each case, the master had a right to believe that the servant intended to waive his objection to the defect of which he complained. This is a question of fact and not of law, and, consequently, for the jury, at least, if not entirely free from doubt."

No two cases are exactly alike, and it is always difficult to formulate a general rule applicable to all. It is worthy of note, however, that in most, if not all, of the cases examined above in which a defective condition existed, it had been one of long standing before the complaint was made, and this, in connection with other facts, led to the conclusion that the complaint was not a complaint of dangerous conditions. Counsel cite *Labatt Mast. & Serv.* 1191, as authority for the proposition that the burden is on the plaintiff to show that the complaint and promise related to the servant's safety, quoting as follows: "A promise cannot be regarded as the inducing motive of a servant's continuance at work unless it appears that the immediate purpose of the stipulated alterations was to secure more effectually his personal safety." Examination of the text shows that the first part of the sentence is omitted. It begins: *"Several decisions are based upon the*

*principle* that a promise cannot," &c. Apparently, the learned author did not care to commit himself to the proposition contended for. We also are unwilling to go to any such length. The master, when employing the servant to work on a machine, holds out to him that due care has been used to make the machine reasonably safe for his use, and the law requires that due care will be used to keep it so. If, while the servant is at work, the machine shows signs of being out of order, the *status* of the parties at once changes, and when the servant, on discovery of the defect in the machine, reports it to the master without more, we think this may properly be regarded by a jury as tantamount to a notification that conditions have changed, and that the servant looks to the master to ascertain whether there is any danger, and if so, to guard against it before requiring the servant to proceed with the work. If the master promises to repair, the servant is entitled under such circumstances to consider that promise as negativing any assumption of risk on his part. The failure of the master to inspect at once does not prejudice the servant, for presumably the master is familiar with the machine and may not need to inspect it. Such were the facts that the jury might have found in the case at bar; and on those facts it was for the jury to say whether the notice to Mr. Dey, as representative of the master, was, or should have been, understood by Dey as a complaint of a dangerous condition, and whether the plaintiff was entitled to regard the alleged promise to repair as based on that complaint.

In our view of this record, the case was one for the jury on all the points stated by the court and counsel, and we perceive no other ground for sustaining the direction of a verdict. Let the judgment be reversed and a *venire de novo* be awarded.