PERRY *v.* MICHIGAN CENTRAL RAILROAD CO.

Master and Servant—Defective Appliances—Sufficiency of Evidence.

> In an action by a brakeman for injuries received while making a coupling, alleged to have been due to the defective condition of the draught-iron apparatus on one of the cars, evidence that such apparatus was found to be defective after the accident is insufficient to justify a finding that it was in the same condition when the car was put into the train, there being other evidence tending to show that the defect may have been caused by the force with which the cars came together at the time of the accident. McGrath, C. J., and Montgomery, J., dissenting.

Error to Jackson; Peck, J. Submitted January 24, 1895. Decided December 31, 1895.

Case by Frank Perry against the Michigan Central Railroad Company for personal injuries.    From a judgment for plaintiff, defendant brings error.    Reversed.

*Parkinson & Campbell*, for appellant.

*Barkworth & Blair*, for appellee.

LONG, J. · Plaintiff, a brakeman in the employ of the defendant, was injured at Grand Rapids, while engaged in coupling cars.    The fourth count of the declaration sets out the claimed cause of action, and it is alleged that plaintiff was a brakeman on a freight train, in defendant's employ, and that, in making up the train, it was the duty of the defendant to put therein only safe and proper cars for transit, furnished and provided with safe and proper appliances to enable the plaintiff to perform his duty as a brakeman in coupling and uncoupling the same; but that the defendant, disregarding its duty, put into said train a car, designated as a "Michigan Central Car No. 7,064," which was not in proper condition of repair, by reason of the draught-iron apparatus provided for the purpose of holding the draught iron in position, and to prevent a greater backward movement of said draught iron than of four inches, not being sufficient for that purpose, but, on the contrary, permitting a backward movement of six inches; so that because of such neglect of said defendant in not properly inspecting said car, and not furnishing reasonably safe cars in said train, and safe appliances for coupling and uncoupling, plaintiff, while in the discharge of his duty, and without fault on his part, while in the act of coupling said car to another car in said train, was injured by said defective draught-iron apparatus permitting said draught iron to be driven back by the draught iron on the car to which he was coupling the same, to a distance of six inches, and so far that the dead-wood of the car to which he was coupling struck against and crushed his hand against the end of said car No. 7,064, breaking and bruising it, and rendering amputation

necessary. The plaintiff had verdict and judgment for the sum of $5,000.

On the trial the plaintiff gave evidence tending to show that the train was made up the night before plaintiff was hurt. It was a long train, and, when made up, was in three sections, on account of street crossings. On the morning of the injury to plaintiff, the engine was backed down and attached to the forward section, and that section was backed down to the middle section, for the forward brakeman to make that coupling. It was down grade, and, the first time the forward brakeman tried to couple, he failed. The plaintiff says that—

"When they struck, he missed the coupling the first time, and I saw him come out, give the engineer the signal to back up again, and he went in again to make the coupling; and, just as I swung the engineer up, to go in and make my coupling, he came out from making his the second time, and he was there. Then I went in to make my coupling, and was caught while in the act of coupling them. I was in there, I should judge, not to exceed three seconds."

He was asked about the rate of speed at which the car came down to the one coupled to, and said:

"It would be hard to state just the speed they were coming at. Just a fair rate of speed for coupling cars. Of course, sometimes they come awful slow, and then, again, they come faster than that. I consider that the speed was nothing more than the usual speed."

He stated that there were coupled to the engine four loaded and two empty cars; that six loaded and four empty cars were in the middle section; that the front section was about 14 car-lengths from the middle section when it started to back; that it was from 20 to 30 rods away; that the cars struck with ordinary force. The way car was at the rear end of the rear section, and the brakes upon the cars of the rear section were set. He also testified on cross-examination that the forward brakeman failed in his first effort to set the brakes, and it set the middle section in motion, but not at a pretty rapid rate,

though it was down grade. He says, further, that he turned his face towards the car that was standing still, so that, if the shock of coupling moved the train, he could move forward with it; that he did not see that anything was the matter with either car, and did not know that anything was the matter. There was other testimony on the part of the plaintiff tending to show that, when the engine backed down upon the middle section, it came down with some considerable force, and that the middle section came against the rear section with some force, as it was down grade.

The plaintiff was alone. No other witness saw the accident. But the plaintiff testifies that the deadwoods of the two cars came together. Plaintiff also gave some testimony tending to show that as the train reached Hastings, on its way from Grand Rapids to Jackson, it was noticed that the deadwoods of those two cars came together, one of the witnesses saying that they were so close that you could not put a pencil in between them. One of plaintiff's witnesses testified that at Jackson there appeared to be something broken; that it looked as if all broken up. This was in reference to the follower, which prevented the cars coming together, though the witness was unable to describe just what it was. On the other hand, the testimony of defendant tended to show that there was no breakage about the follower, or any other part of the draught iron, and that the deadwoods could not come together; the theory of the defense being that, when the two sections came together on the down grade, the cars were thrown together with such force that the plaintiff was injured by a nut and washer on a projecting bolt, and not in the manner claimed. It was also insisted that if the follower was broken, and the injury was occasioned as claimed by the plaintiff, there was no evidence to show that it was broken at the time of the inspection that morning, and that it must, in consequence, have been broken by the impact when the front and middle sections were pushed down upon the rear section, as it was down

grade, and the sections came together with great force. The defendant called the car inspector who made the inspection at Grand Rapids that morning, and he testified positively that on that inspection he found the car in good condition, with no breakage, and nothing out of order.

The court, in its charge to the jury, left certain questions of fact for them to find:

1. That the draught rigging of the defendant's car No. 7,064 was out of repair on the morning of the accident, and before it occurred.

2. That it was so out of repair at the time it was last inspected, on the morning of June 28, 1892.

3. That it was so out of repair, and in such condition, as to allow the buffer of the Grand Rapids & Indiana car to strike against the deadwood of the Michigan Central car; that it would allow the draught iron to move so far backward as to render the use of the apparatus in coupling cars unsafe and dangerous.

4. That this defect was of such a character that it could have been discovered by the inspector, by the exercise of reasonable care, skill, prudence, and diligence, when he last inspected, that morning.

We have carefully examined the entire record to find some testimony which would support the plaintiff's theory that the car was defective at the time of the inspection. It is possible, from the plaintiff's statement and the statement of some of his witnesses, that the car was found to be defective after the accident occurred, though the evidence is overwhelmingly the other way; but, inasmuch as some of the plaintiff's witnesses testified that the deadwoods came together at Hastings, and that there appeared to be some defects when the car was seen at Jackson, we cannot say there was no evidence that it was found to be defective after the injury occurred. But that would not be sufficient to create a liability in this case. The complaint is of improper inspection, and the putting into the train that morning of a defective car,—a car having a defective draught iron,—so that, by reason of such negligence, the plaintiff was injured. The burden was upon the plaintiff to show these facts. It would not do to say

that, because some defects were found after the accident, it necessarily followed that the car was defective at the time of inspection, when we take into consideration the manner of putting the sections together on that morning. There was no evidence whatever that the car was defective at the time it was put in the train. On the other hand, the testimony of the defendant shows that it was in good condition at that time.

Negligence cannot be presumed. It must be alleged, and affirmatively shown. A presumption of negligence cannot be raised without foundation, and the mere fact that an injury occurred is no evidence of fault on the part of the defendant. Neither will it do to say that because, after the injury, the machinery was found out of order, the presumption is that it was defective before the injury, where it appears that the defect might have been occasioned by the coming together of the cars at the very time the plaintiff was injured. *Robinson* v. *Charles Wright & Co.*, 94 Mich. 286; *Toomey* v. *Steel Works*, 89 Mich. 249, and numerous cases there cited.

The defendant asked the court to charge the jury that, "under the undisputed testimony in this case, plaintiff cannot recover." That request should have been given.

The judgment must be reversed, and a new trial ordered.

GRANT and HOOKER, JJ., concurred with LONG, J.

McGRATH, C. J. (*dissenting*). I think that there was evidence from which the jury could properly infer that the defect in the car was not caused by the impact, but existed when plaintiff undertook to couple the cars.

MONTGOMERY, J., concurred with McGRATH, C. J.