BURTON *v.* BRUNSWICK-BALKE-COLLENDER CO.

1. APPEAL AND ERROR—EVIDENCE—DIRECTING VERDICT.

In reviewing on error a verdict directed for defendant, the evidence must be considered in the view most favorable to plaintiff.

2. MASTER AND SERVANT — ASSUMED RISK — DEFECTIVE MACHINERY.

A servant operating a saw, which, as he knew, was liable to throw back pieces of material which it was cutting, assumed the risk of the location of a lever by which the power could be shut off and which was out of plaintiff's reach.

3. SAME.

And he also assumed the risk arising from the fact that his helper, who was near the lever, but had not been instructed how or when to shut off the power, could not understand English, and was not required by the employer to control the starting or stopping of the machine.

Error to Muskegon; Sessions, J. Submitted April 14, 1911. (Docket No. 74.) Decided May 8, 1911.

Case by Byron Burton against the Brunswick-Balke-Collender Company for personal injuries. A judgment for defendant on a verdict directed by the court is reviewed by plaintiff on writ of error. Affirmed.

*R. J. Macdonald* and *James E. Sullivan,* for appellant.

*Fred L. Vandeveer,* for appellee.

BLAIR, J. Plaintiff, a young man 23 years old, brought this action to recover for injuries alleged to have been caused by the negligence of defendant, while plaintiff, in the course of his employment, was operating a hand-feeding ripsaw machine.

Plaintiff had been in the employ of defendant for up-

wards of two years in various capacities, as common laborer, trucking and tailing machines, oiling the shafting and loose pulleys throughout the shop, operating a self-feeding ripsaw machine, a sandpapering lathe, tailing a plainer, and, finally, operating the machine at which he was injured. He had also operated other wood-working machines at other shops, and, as shown by his intelligent description of the various machines and the method of operation, was generally familiar with wood-working machinery. He was placed at work with the hand-feeding ripsaw machine about the 1st of March, and was injured on the 24th of the month. This machine was operated by electric power, which was turned on or off by means of a lever, which was so placed with reference to the operator that he could not reach it while feeding boards to the machine. A tailer, so-called, was employed to take the boards as they passed through the machine and cart them away. The plaintiff's tailer was a Pole, who, as plaintiff knew, did not understand the English language. He was under plaintiff's direction, and he taught him how to do his work by pointing and motioning.

Plaintiff testified:

"It was the duty of the operator to start and stop his own machine, and while I was in charge of the machine I lived up to the rules of the company, and while I had charge of the machine I always started and stopped it myself.

"*Q.* And of course you had never shown him how to start or stop the machine, because you never expected him to do it?

"*A.* No, sir. * * * It is the duty of the man who operates the machine to start and stop the machine. That was the rules and regulations of the shop. When I first went there, they had signs. I had seen those signs, which were tacked around the shop, that it was the operator's duty to start and stop the machines. When I went on the sticker, I asked a fellow what that sign was, and he told me. The tailer never stopped or started the machine as far as I knew. * * * I had an accident there; that accident was on the 24th of March of this year.

"*Q.* Go on and tell the jury just how that happened.

"*A.* I had a piece about 10 inches wide, and I edged the piece up, made it straight; then I put it against the guide and cut it about halfway through, and as I was putting it through—it was a kind of a springy piece—and it started to flop, and when I got it about an inch or two past the splitter she got stuck right there, and I couldn't push it any further, so to keep it from flopping I put my left hand on the side of this board, and I told the boy behind to shut off the power. Instead of that, he got a little excited and put his right hand right on the board, and back she came; it just whirled my body around and throwed my hand right on top of the saw.

" *Q.* Had you ever had an accident of that kind before?

"*A.* No, sir.

" *Q.* Did you think anything about such an accident?

"*A.* No, sir; I never realized it.

" *Q.* Anybody warn you about the danger of an accident of that kind?

"*A.* No, sir.

" *Q.* Why did you lay your hand on the board?

"*A.* To keep it from flopping, because I was afraid she would get up on top of the saw and cause a fly-back.

" *Q.* Why did you tell the man behind the saw to shut off the power?

"*A.* Because I thought that was the safest way; after the power was shut off, then I could take the board out without any danger.  *  *  *

" *Q.* And you knew, as you have already said, that if you didn't hold the material down that there would be a tendency for it to ride the saw?

"*A.* Yes, sir.  *  *  *

" *Q.* And you knew enough to hold on to that material, because if you didn't you knew it would kick back?

"*A.* Yes, sir.

" *Q.* That is what you term a 'fly-back?'

"*A.* Yes, sir.

" *Q.* At the time you were injured you say the board began to jump up and down?

"*A.* Yes, sir.  *  *  *

" *Q.* As soon as that happened, you spoke to this tailer at the end of the saw, and told him to close it off?

"*A.* When I couldn't get it through any further; yes, sir.

"*Q.* And for him to close off the power?

"*A.* Yes, sir.

"*Q.* And the reason that you wanted the power closed off was because you were afraid of a fly-back?

"*A.* Yes, sir.

"*Q.* And your experience had been such that you knew that a saw running toward you would have a tendency to kick the board and cause it to shoot back towards you?

"*A.* Yes, sir.

"*Q.* And that was the reason you wanted the power turned off?

"*A.* Yes, sir.

"*Q.* And the reason that you knew that there was a possibility of being a fly-back was because of your experience in sawing and seeing it done in the various plants where you have worked?

"*A.* Yes, sir."

The allegations of breaches of duty relied upon for a recovery are in substance as follows:

(1) In not furnishing a reasonably safe machine, in that the control of the power was not accessible to the operator while operating the machine.

(2) In not instructing the plaintiff as to the latent dangers of his employment.

(3) In not instructing the tailer what to do in the event of an emergency threatening the plaintiff, as in this case.

(4) That plaintiff had a right to presume that defendant had properly instructed the tailer as to his duty in case of an emergency, and therefore did not assume the risk of his negligence.

The circuit court directed a verdict for the defendant, and plaintiff has removed the record to this court for review upon writ of error.

The tailer gave an entirely different version of the accident from that given by the plaintiff; but, under the familiar rule, we must dispose of the case upon the most favorable view for the plaintiff it will reasonably admit of.

It is clear that the plaintiff thoroughly understood the machine, was entirely competent to deal with the particular emergency which arose, and that instructions to him were unnecessary. He knew what to do to protect himself, but failed, because of the inaccessibility of the control

lever, or the negligence of the tailer in not turning off the power when directed. The plaintiff, knowing that "fly-backs" might occur, and that in that event the safe thing to do was to turn off the power, and knowing that the lever was not accessible to him, and that the tailer would not understand his orders, continued his work, and thereby assumed the risk of the tailer's ignorance and of the location of the control lever.

The tailer had nothing to do with the operation of the machine; his duties, as plaintiff well understood, were of the simplest character, requiring no instructions, except such as plaintiff gave to him, and he had no right to presume that the defendant would provide for instructing unskilled laborers what to do in case of emergencies occurring in the operation of machinery by skilled employés engaged for that special purpose.

The trial judge discussed the questions raised at length in a clear and convincing opinion, and we concur in the result reached.

The judgment is affirmed.

OSTRANDER, C. J., and BIRD, HOOKER and STONE, JJ., concurred.