FRYEZYNSKI *v.* W. W. RICE LEATHER CO.

1. MASTER AND SERVANT — ASSUMPTION OF RISK — PERSONAL INJURIES—MACHINERY.

Plaintiff, who was employed for four months at defendant's wringer, that was operated by power and could only be stopped in case of accident by using a lever near the belt, knew the danger arising from failure to have a lever within his reach and assumed the risk arising therefrom and from the fact that no one was assigned to assist in turning off the power in case of accident.

2. SAME—INSTRUCTING SERVANT—WARNING AS TO OBVIOUS RISKS.

Plaintiff also assumed the risk of his fingers being caught in threads which he left on cloth that had to be wound upon the rolls of the wringer, an obvious danger with which he had become familiar by long experience; defendant was not under obligations to warn or instruct him against the alleged peril.

Error to Emmet; Shepherd, J. Submitted April 4, 1912. (Docket No. 37.) Decided July 11, 1912.

Case by Kazmir Fryezynski against the W. W. Rice Leather Company for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed and no new trial ordered.

*Keena, Lightner, Oxtoby & Oxtoby,* for appellant.

*Geo. E. & M. A. Nichols* and *W. S. Mesick,* for appellee.

STEERE, J. Plaintiff brought this action in the circuit court of Emmet county to recover damages for injuries sustained while employed in defendant's tannery through his hand being caught and crushed in a wringer machine used to press liquid out of soaked hides. The case comes

before this court on a writ of error sued out by defendant upon a verdict and judgment in plaintiff's favor.

He charges defendant with liability for the injury by reason of alleged negligence in failure to properly instruct as to safe methods and warn of dangers attending the work in which he was engaged; also with failure to provide a lever in front of the rolls of the machine so that the operator might instantly throw it out of gear, and failure to furnish him another man to assist in doing the particular work in which he was engaged when injured and which it was his duty to perform. Defendant denies that it is shown to have been negligent in any manner, and urges a reversal of the case on the ground that the testimony conclusively shows proper construction of the machine, proper instruction and warning, a simple machine the dangers of which were obvious and the risks of which are assumed, and that plaintiff's own negligence caused the injury.

Plaintiff was employed in what is known as the "scrubroom," in the lower part of defendant's tannery, where his work consisted of taking soaked hides from a vat and feeding them through wringers which he operated, from whence they passed onto elevators conveying them to a room above for further treatment by others. There were two wringers in the room where he worked, identical in method of operation and construction. They were the same as are customarily used in tanneries for wringing hides. They consist of a framework of wood and iron or steel, anchored to the cement floor, containing two rollers, one above the other, covered with, or incased in, rubber, revolving close together in such manner as to squeeze liquid from any saturated substance passing between them. Photographs of one of the machines were in evidence and made part of the record here. They show a simple construction resembling in outlines an ordinary clothes wringer, but upon an enlarged scale, with the addition of a platform in front at the junction of the rollers on which to spread the hides as they were fed through,

with a belt on one side, at the end of the rollers, for transmission of power to revolve them.    The belt ran from a shaft overhead to a drive pulley on the side of the machine which communicated power to the rollers, causing them to revolve.    By the side of the drive pulley was an idler, or loose pulley, to which the belt was easily shifted.    The machine was made to run or stop by shifting the belt from one pulley to the other.    The shift was made with a stick, or handle, so constructed as to engage the belt and edge of the framework, and enable the operator to readily move the belt from one pulley to the other and stop or start the rollers at will.    The table or platform in front on which hides were spread to pass through the wringer and which was in line with the junction of the rollers was three feet from the floor.    The rollers were about five feet six inches long, and about four inches in diameter.    The rollers revolved, when the machine was regularly running, at a speed of once in 20 seconds, and hides or other substances fed into them travel at a rate of 36 inches per minute.    Owing to the rapid wear of the rollers, they were kept wound with coarse burlap to protect and preserve them.    This wore out quite rapidly, and had to be often renewed.    To do this was one of the duties of the operator of the machines.

Plaintiff caught his hand between the rollers, and was injured while engaged in renewing this burlap covering. He testified that the foreman instructed him how to operate the machines and feed the hides through, and also how to renew the covering of the rollers, for which burlap sacking provided from salt bags was used.    He explained the method of doing this, and stated he always did it just as the foreman showed and told him.    The burlap was prepared for use by cutting off the bottom of the salt bags, slitting them down the sides, and trimming off the ends.    While the machine was not running the sheet of burlap was spread on the table as one would place a hide, the machine was started and the burlap partly run through, then the machine was stopped and the burlap

pulled back over the roller, smoothed out, and the machine again started, letting the burlap wind around and cover the roller.

Plaintiff was born in the Polish province of Posen, Germany, and gave his testimony in the Polish language; the same being translated into English by a sworn interpreter. He also spoke the German language. Previous to immigrating he had worked as a farm laborer and in a brick yard. He began working for defendant in January, 1910, and remained in its employ until March, 1911, excepting five or six weeks while recovering from the injury in question, which resulted in losing his arm to the elbow. When injured, he had been in the United States six months, was a single man, over 25 years of age, had been working in the scrub-room where the wringers were located about five months at $1.60 per day, and subsequently received the same wages as night watchman until he voluntarily left, owing, as he states, to being required to work longer hours. He testified that he worked on both machines at different times, running one two months and a half and the other six weeks. He did this work from January until June, putting the hides through the machines, cutting up the bags and winding the burlap on the rollers when necessary. After being shown by the foreman how to do the work, no one helped him, and he asked for no help. He did not know how many times he had renewed the burlap covering on the rollers, but stated:

" I did not always change the sack cloth every morning. I changed it whenever they were torn. The sack cloth was sometimes strong and sometimes weak; sometimes it lasted two days, and sometimes not. It never lasted a week. Sometimes it would happen that I would change the sack cloth on both machines on the same day."

He stated that his mother used a clothes wringer, and he had seen her operate it; that the only difference between the wringers he operated and his mother's was that his mother turned the handle of hers and a belt turned these; that, when he first went to work on the machine,

the foreman in giving instructions showed him "to keep my fingers about six inches from the rollers," did not tell him that, if he got his fingers in the rollers, he would get them pinched, but plaintiff knew that such would be the result; that the foreman told him when putting the burlap around the rollers to first stop the machine and then proceed with the task as heretofore explained; that in feeding the burlap into the rollers he would take hold of the end, just as he would take hold of the hides, and hold it back; "that it should remain plain and not be twisted;" that in so doing he kept his fingers away from the rollers; that when the table was there he spread the burlap on the table, but when it was absent, in winding the lower roller he held the burlap by the end farthest from the machine while it wound up. When injured, plaintiff was winding the lower roller, having removed the table. He did not testify that he was instructed to remove the table when winding the lower roller except as it may be inferred from his statement, "I did it alone as he told me;" but in answer to questions on cross-examination he testifies in part as follows:

"*Q.* (Turning to Exhibit 1): In order to wind the lower rolls, you have to take a little table pictured there, of boards—you have to lift that out, don't you?

"*A.* Yes; when I wanted to, I could.

"*Q.* Well, could you wind the rolls without taking that away?

"*A.* There is a little hole—an opening—so that I could. And all the time I always have to pull it out, and that morning I pulled it out.   *   *   *

"*Q.* Then what table or platform was there to support this burlap on that you have been telling us about?

"*A.* I hold them, spread them out.   *   *   *

"*Q.* But on this occasion, just before you got hurt, this table had been taken away?

"*A.* Yes, sir.   *   *   *

"*Q.* You were keeping it smooth by holding it with your fingers?

"*A.* Yes, sir; I hold them as I was told.

"*Q.* And, as the burlap wound slowly around the

rollers, your fingers came closer and closer to the rollers there?

"*A.* Yes, he says.

"*Q.* Until finally caught in one of the ravelings, your finger and your hand were caught in the rollers there?

"*A.* Yes, sir."

He does not seem to be very clear in his statement as to just how he was injured. On his direct testimony he testifies:

"*Q.* How did you get your hand into the rollers?

"*A.* I was trying to spread this, and before I thought my finger was caught.

"*Q.* Do you know what caught your finger?

"*A.* I don't know how the bandages got hold of me and put me into the machine.

"*Q.* Do you mean the burlap?

"*The Court:* The sack cloth, he called it.

"*A.* The bandages or sacks—what you call the sacks are composed of thread, the thread of the sacks.

"*Q.* Caught your fingers—is that what you mean to say?

"*A.* Yes; the thread of the sacks caught, and I throwed up my hands, and that is the way I was caught."

On cross-examination he answered that he did not know how his hand was caught. On redirect he stated his fingers caught in the threads of the burlap and drew his hand in; he did not know whether it was the threads or the cloth that drew him to the wringer, that he could not have broken the threads because the cloth wound through too quick. The wringer machine was of approved pattern, and such as are commonly used in tanneries, having the power control located in the usual place. The trial court removed the question of location of the shifting device from consideration of the jury; no negligence being shown in that particular.

Two witnesses who had worked in this tannery testified that in their opinion it would be safer to have an extra man stand by the belt to stop the machine in case of accident while winding the rollers. Such testimony was not sufficient to raise an issue for the jury as to whether it could be properly and safely done by one person exercis-

ing the care of a reasonably cautious and prudent man. As to the position of the control and absence of a helper to shift it in case of accident, plaintiff had full knowledge and assumed the risk. He had been working these machines four months, and was familiar with the purpose and use of the appliance for starting and stopping them. He knew where it was necessary to be to reach the control, and knew there was no one present to do it for him. This was an obvious and known risk which he assumed. *Burton* v. *Brunswick-Balke-Collender Co.*, 166 Mich. 45 (131 N. W. 179); *White* v. *Sugar Co.*, 149 Mich. 473 (112 N. W. 1125).

Plaintiff's chief contention is that defendant was negligent in failing to properly instruct him of the danger of his fingers being caught in the burlap, an obscure and unknown danger to him, and thus be drawn into the rollers, and injured through the medium of a conceded obvious danger. His counsel say in their brief:

"The winding of the burlap was comparatively a simple operation as described by the plaintiff. Of course, plaintiff knew, or says he knew, that, if his fingers went between the rollers, his fingers would be pinched. What plaintiff did not know, and what he was never told, and what he never had reason to suspect was true, was that his fingers might some time be caught in the ravelings of the burlap, and drawn into the wringer. Here is the plaintiff, a common laborer, a Polish peasant, a man who had never worked in a factory before, or had anything to do with machinery. * * * He had no reason either from his own experience on the same machine, or from experience on other machinery, or from anything he might have heard of former employés being injured on that machine, or from any warning from defendant, to think that there was any danger from the ravelings."

It is to be noted in that connection that he had been cutting up these burlap bags, shaping and trimming them and making the edges smooth, for four months. He testified that, when he cut the bags, there were threads along the edges which he was accustomed to remove, so they would not wrap loose around the rollers, and that he

did so the day he was hurt. He certainly, according to his own testimony, had knowledge and experience as to the character and strength of those burlap ravelings. It required no instructions to inform him of the consequences if his hand was attached so tightly to the burlap he fed into the machine that he could not withdraw it. He testified he was told to keep his fingers six inches away from the rollers. He says he knew, if he got them into the rollers, he would be hurt, and we must assume he knew the result would be the same, whether they were pulled or pushed in. This is not a case of youth, inexperience, want of capacity, or ignorance. He was a grown man, was familiar with the machine on which he worked, and the material he used. He had shown capacity to do this work efficiently and satisfactorily for four months.

The only evidence to substantiate the claim that he was an ignorant peasant is that he is a laboring man, a Pole, and does not speak English. Intelligence is not limited to persons speaking English and not engaged in manual labor. Plaintiff spoke two languages, which is more than can be said of the average American. There is no evidence of inability to observe and comprehend the things of common knowledge and understand obvious dangers. He was familiar with the machine on which he worked, and with the process of wrapping the rollers and the material used for that purpose. He prepared the burlap to suit himself, and put it on, according to his instructions as and when he thought best. Apparently, with that temporary inattention to the constant hazard of assumed risks in operating machinery which familiarity sometimes gives rise to, and which so often leads to sad results, he carelessly allowed his fingers to follow the burlap he held too close to the slowly revolving rollers, and was caught. Those rollers only drew objects through at the rate of three feet in a minute, a space of time in which horses have been known to trot half a mile. Most of the many more or less similar cases which are to be found involving injuries from being caught in machinery present serious

questions of defective appliances, youth, or inexperience as applied to the assumption of risk.

Many of our Michigan cases on that subject are reviewed by Justice Hooker in *Swick* v. *Cement Co.*, 147 Mich. 454 (111 N. W. 110). In *Kupkofski* v. *John S. Spiegel Co.*, 135 Mich. 7 (97 N. W. 48), plaintiff, a girl 17 years of age, and, we might infer from her name, of allied nationality with plaintiff here, had been operating a laundry machine, which consisted of a roller and movable table operated by a belt, and which it was claimed was out of repair causing it to operate with a jerk, was injured through her hand being caught by the roller. She had been working in defendant's laundry for a year, but only two weeks on the machine in question. It was found that the dangers were obvious, and she was held to have assumed the risk.

In *Connolly* v. *Eldredge*, 160 Mass. 566 (36 N. E. 469), plaintiff was injured while engaged in putting a new cloth cover on the roller of a steam ironing machine, a work quite similar to that in which plaintiff in this case was engaged. In that case plaintiff was a girl 20 years of age, who had lived on a farm in Ireland until two years previous, when she came to America, and was engaged as a domestic until three or four weeks before she was injured, when she engaged to work in defendant's laundry starching articles of clothing. She had never worked on the machine in question until the day she was injured, though she had become familiar with it by observation. Her hand was caught while holding onto the cloth covering as it wrapped around the roller. In deciding the case Justice Holmes, now of the United States Supreme Court, says:

"The danger to fingers from two cylinders in contact with each other, and seen to be revolving inwardly, is obvious to any person of ordinary powers, and plainly was understood by the plaintiff. *Crowley* v. *Pacific Mills*, 148 Mass. 228 [19 N. E. 344]. * * * The plaintiff was putting a cloth upon the cylinder above the

guard. She saw, or might have seen, all the elements of danger, including the distance between the guard and the cylinder on that side. To appreciate them required no warning or instruction beyond what is furnished by common experience."

In the case at bar the conditions were open to observation and known to plaintiff. There was nothing out of repair or concealed. Cutting the bags and leaving loose threads, contrary to his usual custom, was his own doing, if such was done. Whatever additional danger there was of his fingers being entangled in those threads and drawn into the rollers was obviously incident to the work, was caused by himself, and a risk assumed by him.

The case is reversed, and no new trial ordered.

MOORE, C. J., and McALVAY, BROOKE, STONE, and OSTRANDER, JJ., concurred. BLAIR and BIRD, JJ., did not sit.