DOMBROWSKI v. ROE-STEPHENS MANUFACTURING CO.

1. MASTER AND SERVANT—NEGLIGENCE—WARNING—NOTICE.

Where a servant had worked at a saw for seven months and knew the dangers connected with its operation and could offer no explanation why it failed to work properly, except that the board jumped and forced his hand against

.the teeth, defendant was not liable for failing to warn him of the erratic action of the saw.[1]

2. SAME—NEGLIGENCE—PROXIMATE CAUSE.

The absence of a spreader on a ripsaw, designed to prevent a fly-back resulting from the material pinching, was not the proximate cause of plaintiff's injury which resulted from a plank jumping up and forcing the operator's hand against the ripsaw.

Error to Wayne; Hally, J. Submitted January 14, 1914. (Docket No. 30.) Decided April 7, 1914.

Case by Adam Dombrowski against the Roe-Stephens Manufacturing Company for personal injuries. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*Florian, Moore & Wilson,* for appellant.

*Keena, Lightner, Oxtoby & Oxtoby,* for appellee.

KUHN, J. From a judgment entered on a directed verdict for the defendant, the plaintiff appeals. The plaintiff, 26 years of age, was a molder's helper in the foundry department of defendant's plant. While operating a circular ripsaw in the wood-working department, his left thumb and first and second fingers were severed at the knuckles. He had been employed about one year and nine months before the injury, and during the last nine months had frequently used the ripsaw, and occasionally during the first year. The plaintiff described the way in which the accident occurred as follows:

"I took a piece of plank, and I wanted to cut it in half, in one strip. Then I cut through half, and when I cut through about a half the plank started to jump. And when it began to jump then I held it down with my hand, so that it would not jump. And when I

---

[1] On the question of the master's duty to warn or instruct servant as affected by servant's knowledge or experience, see note in 44 L. R. A. 40.

began to press down on the plank to hold it down it flew up, and as it flew up my hand came in contact with the saw and cut my fingers.

"*Q.* How long was it from the time the plank began to jump to the time you got your fingers cut?

"*A.* Not long. It began to jump, and right after it flew up.

"*Q.* Was it a minute, a second, or two minutes or three minutes?

"*A.* It was not even a minute."

On cross-examination he stated that the saw had worked well, and that he did not know why the piece flew up, as it had never done so before. There had been a fire in the plant, which necessitated the purchase of a new ripsaw, and the saw on which the plaintiff was injured was installed in December, 1910; the injury occurring on July 24, 1911. Several other molders were sworn, who testified that while operating this saw at various times boards had jumped from the table. Plaintiff's counsel state their position in this court as follows:

"*First.* That plaintiff should have been warned as to the erratic action of the saw, and that failure so to warn is evidence of negligence.

"*Second.* That the defendant should have provided the saw with a splitter or spreader in conformity to the general custom, and that failure so to do was evidence of negligence."

It appears from this record that plaintiff had more knowledge of this saw than any other person who worked on it. For nineteen months he had used such a saw, and this particular saw for seven months of that time. He knew how to operate the saw, and knew of the dangers in connection with it. When he had operated it the saw had always worked well, and there had never been any trouble with it. He can give no reason why it did not work well when he was injured. The case comes within the ruling of the court in *Berlin* v. *Mershon & Co.,* 132 Mich. 183 (93 N. W. 248).

See, also, *Bauer* v. *Foundry Co.*, 132 Mich. 537 (94 N. W. 9); *Mushinski* v. *Vincent*, 135 Mich. 26 (97 N. W. 43); *Fryezynski* v. *Leather Co.*, 171 Mich. 113 (137 N. W. 56).

In his denial of a motion for a new trial, the learned circuit judge said:

"Now, what caused the jumping of this wood? Under the testimony this would come from a dull saw, a saw improperly 'set,' or not 'set' at all; from the wet condition of the wood; from a peculiar grain in the wood; and after the wood passed the saw from a lack of 'spreader.' Plaintiff showed there was no 'spreader.' But this device had not been ordered installed by the factory inspector, and it was not shown that its use was so general that its absence would be deemed negligence. As to the other possible causes of the 'jump,' there was no testimony at all, except of the one witness who expressed an opinion that the saw was dull. He did not say, nor was he asked, how he knew this, or when it was that he made the inspection which led to the opinion given. Plaintiff had no theory of how or what was the moving cause of the accident. He did not make out a case of negligence on the part of the defendant, unless it is to be assumed that the happening of an accident, coupled with testimony that machinery does not at all times work with perfect smoothness, is sufficient to justify the plaintiff in going to the jury."

From the testimony of experts sworn by the plaintiff, it appears that "spreaders" are used to prevent what is known as a fly-back, or kick-back, caused by the binding of the wood back of the saw, which revolves towards the operator. As a result, the board comes straight back, and is liable to strike the operator. Mr. Cuyler, a witness for plaintiff, on cross-examination, explained this as follows:

"*The Court:* What do you call it when it only jumps from an inch to three inches? The testimony in this case is that the board only jumped up three inches; never got any higher.

"*A.* Must have been something wrong, because any

man that has worked in a sawmill or around a mill of any kind, around a saw of any description, knows . very well that a saw will naturally throw a board back.

"*The Court:* There isn't any evidence in this case that the board was ever thrown back. The board jumped. The highest it ever jumped was three inches.

"*A.* Did not go back?

"*The Court:* No. There isn't any evidence of any throw-back or fly-back, whatever you call it. The highest it ever jumped was three inches. What do you call that?

"*A.* I don't know what to think about it. That is something new to me. I have been around saws all my lifetime.

"*The Court:* Have I misstated the testimony in that respect?

"*Mr. Oxtoby:* No, your Honor.

"*Mr. Wilson:* Except the plaintiff, who said it jumped up on top of the saw, as I understand.

"*Mr. Oxtoby:* No.

"*The Court:* If the plaintiff said that, I want to hear the testimony.

"*Mr. Oxtoby:* So do I.

"*The Court:* I have no recollection of that, and I paid pretty close attention.

"*A.* Yes; they certainly did.

"*Q.* But other than the three ·factories that you have been in, where you have seen spreaders, you cannot say of your own knowledge whether the thousand and three factories in the city of Detroit use spreaders or not? Do you understand my question?

"*A.* I would not tell you a thing here that I don't know.

"*Q.* You don't know it?

"*A.* I don't know it.

"*By the Court:* *Q.* You don't know what would cause that?

"*A.* Cause what?

"*Q.* This jumping of an inch or inch and a half or three inches?

"*A.* I will tell you. Whenever a board gets on top of a saw, it goes. It don't stop and jump up and down on the table at all.

"*Q.* That is not exactly what I asked you.

"*A.* I got as near as I could to your idea.

"*Q.* The testimony, as I understand it, is that as this piece was being sawed, for instance, that these boards here would jump; this end of them would jump an inch, inch and a half; one witness testified to three inches, but there was never any fly-back.

"*A.* Well, there was something wrong there, because I will tell you. Any man that knows anything about a saw—

"*Mr. Wilson:* Do you mean there is something wrong with the saw?

"*A.* There is something wrong in the testimony there about it jumping two or three inches or an inch and a half, because when a board raises on a saw it is going to come back. It ain't going to stay right there, jumping two or three inches high. It is going to go. Isn't that right?"

It does not appear that there was a fly-back, or kick-back, at the time plaintiff was injured, and as a result it follows that the absence of a spreader could not have had anything to do with the accident.

We are of the opinion that no negligence was shown on the part of the defendant, and that the trial judge reached a proper conclusion in directing a verdict in its favor.

The judgment is affirmed.

McALVAY, C. J., and BROOKE, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.