GUIDO v. DETROIT STOVE WORKS.

MASTER AND SERVANT—NEGLIGENCE—INSTRUCTING SERVANT—ELEVATORS.

Evidence that a foreign laborer, 52 years of age, was instructed by the operator of a freight elevator how to run it, and how to use the lever and manage the gates or shutters, that he ran the same over 30 days without accident and that in some unexplained manner the elevator started and ascended, injuring him, had no tendency to show insufficient instructions by the employer so as to establish its liability for negligent injuries.

Error to Wayne; Tucker, J., presiding. Submitted April 13, 1915. (Docket No. 50.) Decided September 29, 1915.

Case by Guiseppe Guido against the Detroit Stove Works for personal injuries. Judgment for plaintiff. The court on defendant's motion for a new trial afterwards set the judgment aside, granting a new trial. Plaintiff brings error. Affirmed.

*Henry F. Chipman,* for appellant.

*Keena, Lightner, Oxtoby & Hanley,* for appellee.

BROOKE, C. J. Plaintiff, a native of Italy, at the time of his injury was 52 years of age, and had lived in this country 8 years—in Detroit 5 years—and had worked for the defendant for 2 years. During 18 months of that time he had worked in the barn, cleaning horses, washing wagons and automobiles, etc. From this employment he was taken into the factory, where the foreman instructed one Tano Wassella, who up to that time had operated the elevator, to instruct plaintiff how to run the elevator, and open and close the iron shutters inclosing the elevator shaft. The elevator was used for freight only.

Wassella showed the plaintiff how to start and stop the elevator by the use of a lever which controlled the electricity, and instructed him to permit nobody to handle it except himself, or to ride upon it unless accompanied by freight. The elevator was equipped with automatic gates, and in front of each opening there was placed an iron curtain or shutter, which it was the duty of the elevator operator to open in the morning and close at night. These curtains or shutters hung upon rolls fixed at the top of each opening. The operator was able to draw the curtain down, thus closing the opening, and in the morning to push it up upon the roll. After receiving instructions from Wassella, the plaintiff undertook the operation of the elevator and the raising and lowering of the curtains, and performed his duties in both respects with safety to himself and satisfaction to his employer for 30 days. During this period he ran the elevator up and down, stopping at the various floors (of which there were five) as occasion required for the movement of freight.

It was the plaintiff's duty to close the iron curtains at 4:55 p. m. At about that time on the day of his

injury he had the elevator at the top floor. He descended to the first floor, where a fellow employee instructed him to carry a stove to the third floor. This he did, stopping the elevator opposite the third floor. He then removed the stove to a point about 10 feet distant from the elevator shaft, when he returned to the elevator, which was still in position. No one was in or about the elevator cage, except himself. It being time to close the iron shutters, he then turned, facing partially outside, and grasped the curtain at its lower edge to pull it down according to custom. While he was engaged in this act, he testified that the elevator started to ascend. This action of the elevator released the automatic gate, directly under which he was standing, which in descending struck him on the head. He fell backwards into the elevator, but testified that the descending gate caught his legs. The elevator continued to ascend, and according to plaintiff's testimony his legs were caught between the floor of the elevator and the fourth floor, where one leg was broken, and he received other injuries resulting in a double hernia. At the fourth floor he was thrown out of the elevator onto that floor; the elevator proceeding to the fifth floor, where apparently it stopped automatically.

The plaintiff offered no testimony tending to show that either the elevator or any of its appliances were out of order. He further offered no testimony tending to show how the elevator was started. He contented himself by showing that it did start, and by asserting that he himself had not started it. He testified that during the entire month during which he had operated the instrumentality it had worked perfectly, and that it had worked perfectly on the day of his injury up to the moment it started while he was pulling down the iron shutter. No evidence was offered of the failure on the part of the defendant to properly inspect the machinery. Nor was any evidence introduced by plain-

tiff tending to show that the elevator could be started by any person or at any point in the building, except by the operator of the car in the car itself. The record being in this condition at the close of plaintiff's proofs, defendant moved for a directed verdict, upon the ground that no negligence on the part of the defendant had been shown. Counsel for plaintiff having stipulated that the trial judge, upon motion for a new trial, might set aside the verdict if one should be rendered in favor of the plaintiff, the court submitted the case to the jury upon one question only, which is indicated by the following excerpt from the charge:

"I have concluded to submit that question to you upon the sole proposition as to whether or not this man received, through Tommy, from the man there in charge, Mr. Gamble, such instructions as you consider, as reasonable men, a man in his circumstances ought to have received, and further than that you must be satisfied from his testimony introduced here that if it had not been for that, and if he had received instruction, such instruction as you believe he ought to have received, that this accident would not have happened. Only in that event can the plaintiff recover at all."

A verdict having been rendered in favor of plaintiff, a motion was made by defendant for the entry of a judgment in its favor *non obstante veredicto.* In answer to this motion, plaintiff filed an affidavit, made by the witness Tano Wassella, in which said Wassella described the mechanism of the elevator as follows:

"That said elevator is run by electric power, and is supplied with a certain rope, which is in the brick well hole or shaft which incloses said elevator, but which is outside of the car of said elevator, by means of which said rope said elevator can be set in motion from any point from the top to the bottom of said elevator well hole or shaft, by persons who cannot see the persons upon said elevator, unless the person starting said elevator was at the immediate level or in front of said elevator car, and, further, that said person in charge of said elevator could not see the person start-

ing said elevator, except under the same circumstances."

The court, in disposing of the motion, said:

"There is no testimony fairly tending to show the cause of the accident, and nothing in the case, in my judgment, tending to establish any definite negligence on the part of the defendant, unless it may be negligence in hiring such a man as the plaintiff was to run an elevator. Plaintiff did run it successfully for nearly a month, and I am convinced that, even if he were not sufficiently instructed in the first instance, the simplicity of the operation of the elevator was such as to warrant a finding that a man of the grade of intelligence of the plaintiff would and should easily have become entirely familiar with its management in less than a month. At the time of the trial, and after the conclusion of the testimony, the court announced to counsel that a verdict for defendant would be directed, unless counsel consented that if it were submitted to the jury, and a verdict for plaintiff resulted, that this court, if it afterward concluded that a verdict should have been directed, might set aside the verdict and judgment, and direct the entry of a judgment for the defendant as if a verdict had been in the first place directed for the defendant."

We are of opinion that the action of the learned trial judge was warranted under the following authorities: *Perry* v. *Railroad Co.,* 108 Mich. 130 (65 N. W. 608); *Voigt* v. *Car Co.,* 112 Mich. 504 (70 N. W. 1103); *Dombrowski* v. *Manufacturing Co.,* 180 Mich. 202 (146 N. W. 666); *Beach* v. *Railroad Co.,* 180 Mich. 524 (147 N. W. 586); *Meyer* v. *Chair Co.,* 180 Mich. 604 (147 N. W. 488); *Cressler* v. *Paper Co.,* 181 Mich. 422 (148 N. W. 176).

The judgment is affirmed.

KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.

The late Justice MCALVAY, to whom this case was assigned, took no part in this decision.